Yvonne CARPENTER, Petitioner,

v.

DISTRICT UNEMPLOYMENT COM-
PENSATION BOARD, Respondent.

No. 13136.

District of Columbia Court of Appeals.

Argued Nov. 28, 1978.

Decided Nov. 13, 1979.

Dalton Howard, Washington, D. C., with
whom Wanda D. Foster, Washington, D. C.,
was on the brief, for petitioner.

Norma Denise Wilson, Washington, D. C.,
with whom Russell L. Carter and Bill L.
Smith, Washington, D. C., were on the
brief, for respondent.

Before GALLAGHER and HARRIS, As-
sociate Judges, and PAIR, Associate Judge,
Retired.

PAIR, Associate Judge, Retired:

This petition for review [1] challenges a
decision of the District Unemployment
Compensation Board [2] (the Board) which
disqualified the petitioner from unemploy-
ment benefits for six weeks. The disquali-
fication was based upon a determination

---

1. D.C.Code 1978 Supp., § 46–312.

2. The District Unemployment Compensation
Board is now identified as the Bureau of Em-
ployment Security, D.C. Department of Labor,
but will be referred to herein as "the Board."

that petitioner on June 30, 1977, voluntarily resigned her position at the Federal Trade Commission (the F.T.C.) without good cause.[3] We conclude from our review of the record that the Board's decision is without support in substantial evidence and reverse.

The material facts are not in dispute. Petitioner, the mother of three children, had been employed at the F.T.C. for about eight years. On June 30, 1977, she resigned and on July 7, 1977, filed a claim for unemployment benefits. In processing the claim several forms were completed, presumably by a Claims Deputy. Although to some extent illegible, the forms contain statements attributed to petitioner, some written above and some below her signature which appears at various places on the forms. As nearly as can be determined, the statements were to the effect that (1) petitioner "voluntarily resigned in lieu of termination due to absenteeism", (2) she resigned "because my child is sick and I need to be at home", and (3) "I am able, available, and actively seeking full time work." A copy of the claim form was sent to F.T.C. requesting as provided by 5 U.S.C. § 8506(a), information respecting petitioner's termination of her federal employment.[4] There is, however, no showing in the record that F.T.C. ever responded to the request as provided by 20 C.F.R. § 609. Nor is there any showing that F.T.C. at any time put in issue petitioner's claim for benefits. *Cf. Salas v. District Unemployment Compensation Board,* D.C.App., 387 A.2d 1107 (1978); *Smith v. District Unemployment Compensation Board,* 140 U.S.App.D.C. 361, 367, 435 F.2d 433, 439 (1970).

Nevertheless the Claims Deputy determined that petitioner resigned her job for personal reasons saying: "All prudent measures to maintain work were not taken. Good cause for leaving full time available work has not been established. You are therefore disqualified for the period shown."

Petitioner appealed to the Board and pursuant to D.C.Code 1973, § 46–311(c) an appeals examiner conducted a hearing[5] at which there was testimony by petitioner in substance as follows.

Commencing in March 1977, petitioner was confronted with a series of family problems which required absences from her employment. Her youngest child, a boy, developed bronchial and eye infections. Because petitioner was the only adult in her household, she frequently took leave to take the child for medical treatment. Later it became necessary to have the child hospitalized for surgery involving the removal of an eye. After the child was discharged from the hospital, petitioner took additional leave, when required, to care for him and to return him to the hospital for out-patient treatment. At some time during this period, it was reported to petitioner that the older children, two girls, were not attending school regularly. Aware of her responsibili-

---

**3.** D.C.Code 1973, § 46–310, reads in pertinent part as follows:

Disqualification for benefits.

(a) An individual who has left his most recent work voluntarily without good cause, as determined by the Board under regulations prescribed by the Council of the District of Columbia, shall not be eligible for benefits with respect to the week in which such leaving occurred and with respect to not less than four nor more than nine consecutive weeks of unemployment which immediately follow such week, as determined by the Board in such case according to the seriousness of the case. In addition such individual's total benefit amount shall be reduced in a sum equal to the number of weeks of disqualification multiplied by the weekly benefit amount.

**4.** 5 U.S.C. § 8506(a) provides that the federal employing agency shall furnish information concerning the employee's federal service and wages together with its findings as to "the reasons for termination of Federal service."

**5.** F.T.C. was notified of the time and place of the hearing but apparently again did not respond or put in issue petitioner's claim for unemployment benefits.

ty to maintain the girls' attendance in school, petitioner again took leave so as to confer with school authorities.

Petitioner's absences from her work were, with a few exceptions, covered by authorized leave. On occasions when an emergency situation arose in her home she was absent without leave.[6] For some time the absences were indulged, no doubt because petitioner's supervisor was informed of the nature of the family problems. However, when the absences continued the supervisor began to harass petitioner and finally, according to the hearing transcript, the following transpired:

> CLAIMANT: Well on June the 29th, Mr. Jack Odom and Miss Muriel Randall called me in the office—in Jack Odom's office for a conference, and they told me that I was given an ultimatum either to be fired or resign. And I told them, that you know—that they couldn't do this. Cause I wasn't going to resign at that time. And then they said that they had already taken action with the personnel office and it was already in effect that they were going to fire me, so at that time I left for the day, and the next day I went and talked to . . . .

> \* \* \* \* \* \*

> And I asked him was—you know was it possible that they could do this to me, you know just give me an ultimatum to resign or be fired. So he told me yeh that they already—he had talked to Mr. Odom and they had already made arrangement for me to be fired. So he said—but he told me, said now it would look better on your part if you just—by your son being sick, if you'd just go ahead and say—if you'd resign because your son was in the hospital and you needed some time to be with him. He said because you . . . to find a better job, cause if you be fired you won't you know be able to get a job. So I said okay then, so I said okay I'll just go ahead and resign. . . .

The Board's appeals examiner found the facts to be substantially as set forth above and made what he termed a "conclusion", which reads:

> Conclusion: For the purpose of benefits, it is incumbent on the claimant to justify resigning from suitable, full-time work. In this case, the claimant acknowledged that she resigned from her employment in lieu of being discharged for absenteeism. In justification of her unsatisfactory attendance, the claimant acknowledged that she was repeatedly absent from her work because her children were either ill or experiencing difficulty in school.

> Although, it is presumed that a child's illness is sufficient to justify being absent from work; the other matters alleged by the claimant are insufficient to sustain such a presumption. Inasmuch as the claimant acknowledged having notice that the employer would no longer approve her absences, it was incumbent on the claimant to establish that the school related difficulties were compelling in nature and required that she be absent from her work. In the absence of substantive evidence, it will not be presumed that the claimant's absences were justified.

> \* \* \* \* \* \*

> Thus, the Examiner finds that the claimant resigned in lieu of being discharged for absenteeism. Resigning in lieu of discharge is not good cause to quit for the purpose of benefits.

The Board, "find[ing] no error as to either fact or law," affirmed the determination of the appeals examiner.

In the factual setting disclosed by this record, the function of the Board's appeals examiner was to determine from evidence adduced at the hearing whether petitioner's resignation was voluntary and without good cause and, if not, whether she had been guilty of disqualifying misconduct.[7] *See*

---

6. There was a total of eight or nine hours of such unauthorized leave.

7. D.C.Code 1973, § 46–310(a). *See in this connection Hickenbottom v. District Unemploy-*

*Thomas v. District of Columbia Department of Labor,* D.C.App., 409 A.2d 164 (No. 13759, decided this date). The issue we address, therefore, is whether the Board's decision flowed rationally from the probative evidence of record which consisted only of petitioner's testimony and the documentary evidence of doubtful competency.

 By virtue of the Board's own rules,[8] petitioner came first to the eligibility interview and later to the hearing on her appeal to the Board, cloaked with a presumption that her resignation from Federal employment was involuntary. We have found nothing in the documentary evidence of sufficient competency to rebut the presumption.[9] Certainly there is nothing in her testimony which rebuts the presumption. The testimony was uncontroverted and tended to establish that her resignation was coerced by representations concerning pending or threatened personnel actions which if completed would have had an adverse effect when she sought other employment. In our view, the Board's appeals examiner was not privileged to disregard this evidence which demonstrated so clearly that petitioner's resignation was involuntary when tested, as prescribed by the Board's Rule 301(a), *i. e.,* ". . . what would the reasonable and prudent individual in the labor market do in like circumstances." *See Thomas v. Department of Labor, supra.*

In *Hawkins v. District Unemployment Compensation Board, supra,* we sought to make it clear to the Board that:

Unemployment benefits " 'are a matter of statutory entitlement for persons qualified to receive them,' and, therefore, are interests, like welfare benefits and wages, which are protected by procedural due process requirements . . . ." [*Id.* at 623, citations omitted.]

*See also California Department of Human Resources v. Java,* 402 U.S. 121, 130–33, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971).

 In the exercise of our review function, we are obliged to overturn a decision of the Board when it is found to be arbitrary and capricious or not in accordance with law. D.C.Code 1973, § 1–1510(3)(B). We are satisfied from our review of this record that reversal is compelled here, and the case is remanded for further action consistent with this opinion.

*So Ordered.*

---

*ment Compensation Board,* D.C.App., 273 A.2d 475, 477–78 (1971). We said in *Green v. District Unemployment Compensation Board,* D.C.App., 346 A.2d 252 (1975), that as a general rule disqualification from unemployment benefits must be based upon reasons assigned by the employer and that the existence of other grounds is immaterial. *See also Simmons v. District Unemployment Compensation Board,* D.C.App., 292 A.2d 797 (1972).

8. 18 DCRR § 301.1 VOLUNTARY LEAVING WITHOUT GOOD CAUSE:
(a) In determining whether the leaving is such as to disqualify the individual for benefits for the time prescribed, it must appear that the leaving on his part was (1) voluntary in fact, within the ordinary meaning of that term, and (2) without good cause, in light of

all such facts, conditions, and circumstances as are relevant to the particular case. Ordinarily a leaving will be presumed to be *involuntary* on the part of the claimant unless the facts clearly indicate otherwise. Where it appears that the leaving was voluntary, the burden of proof shall be on the claimant to establish good cause. What is good cause for leaving will accordingly depend upon the facts in each case and will not be confined to causes connected solely with the employment itself. The test will be—*what would the reasonable and prudent individual in the labor market do in like circumstances.* (Approved October 26, 1954, effective January 1, 1955.) [Emphasis in original.]

9. *Hawkins v. District Unemployment Compensation Board,* D.C.App., 381 A.2d 619 (1977).