Shirley L. PERKINS, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.

No. 83–939.

District of Columbia Court of Appeals.

Argued May 29, 1984.

Decided Oct. 9, 1984.

Michael O. DeMouy, Washington, D.C., for petitioner. Rozanne Look, Washington, D.C., entered an appearance for petitioner.

N. Denise Wilson-Taylor, Washington, D.C., for respondent. Grace Lockett Rosner, Washington, D.C. entered an appearance, for respondent.

Before NEBEKER and TERRY, Associate Judges, and GALLAGHER, Associate Judge, Retired.

TERRY, Associate Judge:

Petitioner seeks review of a decision of the Department of Employment Services ruling her ineligible for unemployment compensation. She contends that the Department's appeals examiner failed to make findings of fact on each material contested issue, *see* D.C.Code § 1–1509(e) (1981), that, alternatively, the findings are unsupported by substantial evidence, and that the examiner erred in admitting two documents into evidence. We find all of her arguments unpersuasive and affirm the decision of the Department.

## I

▪ Under the District of Columbia Administrative Procedure Act, the appeals examiner's decision must contain findings of fact—"a concise statement of the conclusions upon each contested issue of fact"— and conclusions of law, both of which "shall be supported by and in accordance with the reliable, probative, and substantial evidence." D.C.Code § 1–1509(e) (1981); *see also* 18 DCRR §§ 4609.2–4609.3 (1981). This court has refashioned these requirements into a three-part test for administrative decisions in contested cases: (1) the decision must state findings of fact on each material, contested factual issue; (2) those findings must be based on substantial evidence; and (3) the conclusions of law must follow rationally from the findings. *E.g.,*

*Thomas v. District of Columbia Department of Labor,* 409 A.2d 164, 169 (D.C. 1979); *Citizens Association of Georgetown v. District of Columbia Zoning Commission,* 402 A.2d 36, 41–42 (D.C. 1979). While the appeals examiner in this case did not adhere to the formal distinction between findings and conclusions, *see Citizens Association of Georgetown,* supra, 402 A.2d at 42, he did make findings on the one material, contested issue of fact: whether or not petitioner resigned voluntarily.

When petitioner left her job in December 1982, anyone who left work "voluntarily without good cause connected with the work" had to work for at least four weeks and earn at least four times the amount of weekly benefits before becoming eligible for unemployment compensation. D.C. Code § 46–111(a) (1981), *as amended by* D.C.Law 4–147, § 2(h), 29 D.C.Reg. 3347, 3355–56 (expired 1983).[1] Petitioner enjoyed a rebuttable presumption that her departure from work was involuntary, 18 DCRR § 4612.3 (1981), but it could be overcome by evidence "that the leaving was voluntary *in fact,* within the ordinary meaning of the word 'voluntary.'" 18 DCRR § 4612.2 (1981) (emphasis in original). A finding of voluntariness shifts the burden to the claimant to demonstrate that he or she left work for "good cause connected with the work." 18 DCRR § 4612.4 (1981). The test for whether the claimant's reason for leaving work meets this standard is whether "a reasonable and prudent person in the labor market" would have done the same. 18 DCRR § 4612.5 (1981).[2]

There is no dispute that petitioner resigned from her job. Nor did she contend before the appeals examiner that, if she resigned voluntarily, she did so for "good cause connected with the work." The only

1. The law now requires every claimant to work for at least ten weeks and to earn at least ten times the weekly benefit amount before becoming eligible for benefits. D.C.Code § 46–111(a) (1984 Supp.).

2. The regulations list several possible reasons for leaving which may not be regarded as good cause. *See* 18 DCRR § 4612.6 (1981).

material issue of fact before the appeals examiner was whether petitioner's resignation was voluntary, *see* 18 DCRR § 4612.2 (1981), or whether it came in the face of "imminent discharge," 18 DCRR § 4612.8 (1981), which would make it involuntary. The examiner explicitly addressed this question, and rejected petitioner's claim that she resigned involuntarily. He found that she was not faced with imminent termination, but only a ten-day suspension, at the time she left. While this determination appears under the heading "conclusions," it is really a finding of fact. The examiner apparently chose to label his treatment of the material issues (the "ultimate facts") as "conclusions," while using the heading "findings of fact" for a narrative of the events leading to petitioner's resignation. While this arrangement is not as tidy and logical as one might prefer, it surely complies with the requirements of D.C.Code § 1–1509(e).

## II

■ Petitioner contends alternatively that the examiner's findings that she resigned voluntarily and without good cause connected with her work are not supported by substantial evidence, as D.C.Code § 1–1509(e) (1981) requires. We disagree. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938) (citations omitted), quoted in *Washington Post Co. v. District Unemployment Compensation Board*, 377 A.2d 436, 439 (D.C. 1977). Here that amount of evidence, and then some, supports the examiner's findings.

Petitioner's supervisor testified that he had planned to suspend her for ten days on the day she resigned. He identified the suspension letter he had intended to present to her, and said that she announced that she would resign before he could tell her of its contents. He contradicted her testimony that he had told her two days earlier that she was fired, and stated that he never told her that she would be fired if she did not resign first. Petitioner's letter of resignation gives every indication that she was not forced out, but was simply fed up with her employment situation. Further, her initial claim for benefits and her appeal request state that she resigned because she felt she was being overworked, and the latter form asserts that she was promised a promotion to a higher grade, which apparently she did not receive. All of this evidence strongly supports the appeals examiner's finding that petitioner's resignation was voluntary within the meaning of the regulations.[3]

Given the finding of voluntariness, the burden of showing that the resignation was for "good cause connected with the work" rested with petitioner. 18 DCRR § 4612.4 (1981). Because petitioner elected not to meet this burden, she cannot now challenge the examiner's decision on this point. But even if she could, the result would be the same: none of the reasons she invoked for resigning would necessarily constitute "good cause connected with the work." Substantial evidence, then, would have supported the examiner's finding that petitioner failed to meet her burden even if she had chosen to address it.

## III

■ Finally, petitioner maintains that, in admitting into evidence two memoranda addressed to her concerning her probation,

---

**3.** One might infer from the evidence that petitioner feared that the letter her supervisor sought to give her was a letter of termination, and that she decided to beat him to the punch by resigning. The evidence also shows, however, that this fear was baseless: the letter was a notice of a ten-day suspension, not a discharge.

For a threatened termination to be "imminent," the prospect of termination must be real; here it was not. *Compare Carpenter v. District of Columbia Unemployment Compensation Board*, 409 A.2d 175 (D.C.1979); *Thomas v. District of Columbia Department of Labor, supra.*

the appeals examiner deprived her of her right to cross-examine their author, Brent Oldham, who was not present at the hearing. D.C.Code § 1–1509(b) (1981); *see Hawkins v. District Unemployment Compensation Board*, 381 A.2d 619, 623 (D.C. 1977). We reject petitioner's argument because she misperceives the purpose for which the memos were introduced.

Obviously, the two memos would not have been "reliable, probative, and substantial evidence" of the conduct which they described. D.C.Code § 1–1509 (e) (1981); *Hawkins v. District Unemployment Compensation Board, supra; General Railway Signal Co. v. District Unemployment Compensation Board*, 354 A.2d 529, 532 (D.C.1976). But they were not offered to prove misconduct; rather, they were introduced only to show that petitioner was on probation when she resigned.[4] Petitioner herself attested to the documents' probative value for this purpose, acknowledging both that she had received them and that she had been put on probation. There is therefore no legal basis for challenging the admission of the two memos.

*Affirmed.*

---

**4.** Thus petitioner relies in vain on the regulation that "[i]n an appeals hearing, the persons who ... issued ... statements alleging misconduct shall be present and available for questioning by the adverse party." 18 DCRR § 4613.6 (1981). This regulation applies only to inquiries under D.C.Code § 46–111(b) (1981) concerning whether a claimant should be disqualified from receiving unemployment benefits because he or she was discharged for misconduct. No such inquiry took place here because the examiner rejected petitioner's assertion that she had been constructively discharged. *See* 18 DCRR § 4612.8 (1981). Whether petitioner had been guilty of misconduct was therefore not in issue, and the regulation was and is irrelevant.