HAMEL & PARK, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT
SERVICES, Respondent.

No. 83–1283.

District of Columbia Court of Appeals.
Argued Oct. 23, 1984.
Decided Feb. 8, 1985.

Michael K. Wyatt, Washington, D.C., with whom Virginia L. White-Mahaffey and Richard F. Riley, Jr., Washington, D.C., were on the briefs, for petitioner.

Michael A. Milwee, Washington, D.C., for respondent.

Anthony S. Cooper, Washington, D.C., filed an amicus curiae memorandum on behalf of The Greater Washington Bd. of Trade.

Before PRYOR, Chief Judge, and NEBEKER and BELSON, Associate Judges.

PRYOR, Chief Judge:

This case involves a petition by Hamel & Park (petitioner) for review of a final decision by the District of Columbia Department of Employment Services (respondent) on the unemployment compensation claim of Ms. Tanya M. Roberts (claimant). Petitioner claims that in finding Ms. Roberts eligible for unemployment compensation, respondent violated Hamel & Park's constitutional and statutory rights by precluding it from interposing a "voluntary quit" defense, preventing it from developing evidence on the circumstances of Ms. Roberts'

termination from her final employer, and denying it access to the wage records of claimant's final employer. We find that respondent's actions in denying petitioner the opportunity to develop evidence on the circumstances of claimant's termination from her final employer violated applicable statutes and regulations. Thus, we remand on this basis alone for a hearing at which petitioner can be afforded the opportunity to develop this evidence.

## I

Ms. Tanya M. Roberts, a former legal secretary, worked successively for two law firms in the District of Columbia. Petitioner, Hamel & Park, was the first of these employers. Claimant left the employ of Hamel & Park after submitting a letter of resignation dated July 31, 1982. Claimant left petitioner voluntarily, and did not file an unemployment compensation claim after her resignation.

Claimant's next employer was the law firm of Tucker, Flyer, Sanger & Lewis (Tucker, Flyer). Roberts left her position with that firm on or about May 3, 1983, for reasons that do not appear in the record. After leaving Tucker, Flyer, Roberts filed a claim for unemployment compensation.

The Office of Unemployment Compensation, District of Columbia Department of Employment Services (Office), initially determined that claimant was eligible for unemployment benefits. Hamel & Park appealed this initial determination, asserting that because Roberts had left its employ voluntarily, she was not eligible for unemployment compensation.

On August 10, 1983, a hearing was held on petitioner's appeal from the initial determination of claimant's eligibility for benefits. No representative of claimant's final employer, Tucker, Flyer, appeared at the hearing. At the hearing, the Appeals Examiner did not allow Hamel & Park to question claimant or to review documenta-

ry evidence in the Office's files on the circumstances of her termination from her final employer. Also, the Examiner did not allow petitioner to interpose the defense that claimant had voluntarily left her job at Hamel & Park, and did not permit review of the records of claimant's wages at Tucker, Flyer.

After the hearing, the Appeals Examiner upheld the Office's initial determination, and Hamel & Park was charged with 56.64% of claimant's base period wage credits. Hamel & Park appealed both the Examiner's determination of claimant's eligibility, as well as the calculation of its base period responsibility for unemployment benefits. The Office of Appeals and Review, Department of Employment Services, affirmed the decision of the Appeals Examiner. This petition for review followed.

## II

### A.

Under the Unemployment Compensation Act (the Act), "any individual who left his *most recent work* voluntarily without good cause connected with the work" is not eligible for unemployment benefits until after requalifying through further employment. D.C.Code § 46–111(a) (1984 Supp.) (emphasis added). As respondent interprets this language, only the circumstances of a claimant's termination from a final base period employer is relevant to the determination of eligibility for benefits.

In the District of Columbia, unemployment benefits are paid out of the District Unemployment Fund (Fund). D.C.Code § 46–102 (1981). The Fund is comprised of contributions made by employers according to the complex regulatory scheme established in D.C.Code § 46–103 (1981 & 1984 Supp.). Under this scheme, if an employer has an "experience rated account"[1] and is

---

1. Employers with non-experience rated accounts pay taxes at an average rate determined annually. D.C.Code § 46–103(c)(3) (1984 Supp.). Thus, their employees' record in filing for claims has no bearing on the amount of the employer's unemployment taxes.

a "base period employer" [2] of an employee who receives benefits, the employer's contributions to the account increase as a result of payment of those benefits. *Id.*[3]

Hamel & Park was a base period employer of Ms. Roberts. Consequently, Hamel & Park was subject to an increased contribution to the Fund when Ms. Roberts was found eligible for unemployment benefits. Pursuant to respondent's interpretation of D.C.Code § 46–111(a) (1984 Supp.), Hamel & Park, as non-final employer, was precluded from raising claimant's voluntary termination from Hamel & Park either as a basis for attacking Ms. Roberts' eligibility for benefits, or as grounds for avoiding an increased contribution to the fund resulting from benefits paid to her. Petitioner claims that respondent's actions violated its rights under the equal protection and due process clauses of the United States Constitution. U.S. CONST. amend. V.

"Unless a statute employs a classification that is inherently invidious or that impinges on fundamental rights," the equal protection obligation imposed by the due process clause requires only "that legislation classify the persons it affects in a manner rationally related to legitimate governmental objectives." *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981) (citations omitted). Petitioner claims that this equal protection standard has been violated in this case because the distinction in the Act between final and non-final base period employers is "inherently irrational" and "does not serve a legitimate governmental objective." We disagree.

That the benefits paid under a tax are unrelated to the persons taxed and the amount of the tax they pay does not make the scheme constitutionally infirm. *Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 521, 57 S.Ct. 868, 878, 81 L.Ed. 1245 (1937). In *Carmichael,* the Supreme Court upheld the validity of an unemployment compensation tax despite the fact that the taxing scheme did not distinguish between employers with high and low rates of unemployment experience. *Id.; see also Preissman v. Board of Appeals, Maryland Department of Employment Security,* 30 Md.App. 679, 354 A.2d 216 (Md.Ct. Spec.App.1976) (denying equal protection challenge to Maryland statutory provision similar to the District's statute). A similar rule applies here, where the taxing scheme does not differentiate between final and non-final employers.

Moreover, the statutory scheme of the Act is rationally related to legitimate governmental objectives. Underlying the purposes of the Act is the "notion that it should be the responsibility of employers to compensate their employees when they become unemployed through no fault of their own." *Von Stauffenberg v. District Unemployment Compensation Board,* 148 U.S.App.D.C. 104, 107, 459 F.2d 1128, 1131 (1972). We find that the City Council acted

---

**2.** "Base period" is the block of time used under the statute to measure prior wages and calculate unemployment benefits. The statute defines "base period" as, "the first 4 out of the last 5 completed calendar quarters immediately preceding the 1st day of the individual's benefit year." D.C.Code § 46–101(6) (1981).

**3.** The manner in which employer contributions to the Fund are affected by the payment of benefits to base period employees is outlined in D.C.Code § 46–103(c) (1981 & 1984 Supp.). Benefits paid to an individual are charged against the accounts of his or her base period employers. The amount of benefits chargeable against each base period employer's account bears the same ratio to the total benefits paid to an individual as the base period wages paid to

the former employee by such employer bear to the total amount of base period wages paid to the individual by all base period employers. Each employer's annual contribution rate is calculated, in part, on the basis of the employer's experience in the payment of contributions and benefits charged against his account. D.C.Code § 46–103(c)(5) (1981).

Significantly, however, other factors also determine an employer's unemployment compensation tax rates. These include the employer's total payroll, D.C.Code § 46–103(c)(8)(A) (1984 Supp.); the amount of all tax contributions made by the employer since it became liable for taxes, *id.;* and the solvency of the Fund. D.C. Code § 46–103(c)(4)(B) (1981).

reasonably in determining that "fault" is more properly assessed by looking only at the circumstances of termination from the final employer. As noted in respondent's brief, the basis for this determination was the judgment that the "fault" of a voluntary termination from a non-final employer is purged if subsequent employment is obtained.[4]

Finally, we find that in enacting the current scheme, the City Council could have been motivated by practical considerations. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). In 1983, the Office handled 49,938 claims[5] for unemployment compensation requiring separation determinations, and processed 3,830 appeals.[6] Permitting non-final employers to assert the voluntary quit defense would potentially require respondent to make many more costly and time-consuming separation determinations. This would strap already limited resources.

Thus, we conclude that the statutory scheme, as interpreted and applied by respondent, does not violate the equal protection clause. Because we find that petitioner has no right to assert the voluntary quit defense, we further conclude that no deprivation of due process occurred at the hearing when the Appeals Examiner prevented petitioner from asserting this defense.

B.

Petitioner claims next that the Appeals Examiner violated the Act and regulations promulgated thereunder, as well as the due process clause, by precluding cross-examination of Ms. Roberts and examination of documentary evidence on the circumstances of her termination from her final employer.[7] Under D.C.Code § 46–113 (1981), our standard of review in unemployment compensation cases is governed by the District of Columbia Administrative Procedure Act (DCAPA) which requires us to set aside agency actions found to be "not in accordance with law." D.C. Code § 1–1510(a)(3)(A) (1981). After reviewing applicable authority, we find that petitioner's position is consistent with the statutory scheme of the Act. Thus, we conclude that the Appeals Examiner erred in foreclosing all inquiry into the circumstances of claimant's final termination.[8]

In reaching this conclusion, we note first that the Act and implementing regulations are silent as to whether, at a hearing, a non-final employer may raise the circumstances of a claimant's termination from a final employer. Under 18 DCRR § 4606.4 (1982), the claimant's most recent employer bears sole responsibility for presenting objections to the claim at the predetermination fact-finding interview.[9] However, this regulation does not indicate the rights of a non-final employer on appeal of the initial determination. Similarly, while the Act provides that an individual may be disquali-

---

4. The "durational disqualification" provisions of D.C.Code § 46–111(a) (1984 Supp.) also reflect this judgment. Under these provisions, "any individual who left his most recent work voluntarily without good cause connected with the work ... [is ineligible for benefits], until he has been employed in each of 10 subsequent weeks ... and, ... has earned remuneration from employment equal to not less than 10 times the weekly benefit amount to which he would be entitled...." *Id.* Thus, under this provision, the fault of voluntary termination from a *final* employer is purged through reemployment.

5. D.C. DEPARTMENT OF EMPLOYMENT SERVICES, UNEMPLOYMENT COMPENSATION PROGRAM OF THE DISTRICT OF COLUMBIA, 1983 ANNUAL REPORT 13 [hereinafter cited as ANNUAL REPORT].

6. ANNUAL REPORT, *supra,* at 19.

7. The Appeals Examiner ruled that an inquiry into the circumstances of claimant's termination from her final employer would be "irrelevant and immaterial."

8. Because we conclude that respondent's actions violated the Act, we do not reach petitioner's constitutional claim that the Appeals Examiner's actions violated Hamel & Park's due process rights.

9. Under 18 DCRR § 4606.4 (1982), the most recent employer's "minimum obligation is to inform the Director and the claimant of any and all disqualifying factors."

fied from receiving benefits if he left his most recent work voluntarily without good cause connected with the work, it does not indicate who may raise this issue.[10] D.C. Code § 46–111(a) (1984 Supp.).

Moreover, our ruling finds support in various sections of the Act and implementing regulations. We note at the outset that the implementing regulations define "interested party" as "a claimant or an employer whose statutory rights or obligations pursuant to administration of the Act may be affected by the outcome of a determination, redetermination, or decision." 18 DCRR § 4604.12 (1982). Thus, non-final base period employers fall within this definition and are entitled to rights accorded "parties" under the statute.

Section 46–112(e) (1981) of the Act provides that, "[a]n appeal tribunal, after *affording the parties reasonable opportunity for fair hearing,* shall, ... affirm or modify the finding of facts and the initial determination." (Emphasis added). The regulations provide that at the hearing, "[e]ach party shall have the right to present an affirmative case or defense by oral and documentary evidence; to submit rebuttal evidence; and to conduct such cross-examination as may be required for a full and true disclosure of the facts." 18 DCRR § 4608.10 (1982).[11] Another regulation permits an interested party, upon request, to obtain information which, "concerns a claim for benefits or affects a charge to an employer's account ... to the extent necessary for the proper representation of a party's position...." 18 DCRR § 4603.2 (1982). These provisions emphasize the centrality of full disclosure at the hearing. They support our conclusion that the requirements of a fair hearing include allowing interested parties—which by defi-

nition include non-final base period employers—to develop evidence on the circumstances of the employee's termination from a final employer.

Our cases have never examined whether a non-final base period employer has the right to develop evidence on the circumstances of an employee's termination from a final employer. However, we have noted, "Because an employer's contribution to the unemployment compensation fund is affected by the claims experience of its employees ... the employer's reason for discharging the employee must be scrupulously examined in all levels of the appeal process." *American University v. District of Columbia Department of Labor,* 429 A.2d 1374, 1375 (D.C.1981) (citation omitted). This recognition of the importance of the eligibility determination is consistent with our decision to allow non-final base period employers to present evidence at the hearing on the circumstances of claimant's final termination.

Our conclusion is also supported by the legislative history of amendments to the Act, passed on March 15, 1983. The purpose of the amendments was to "protect the solvency of the Unemployment Trust Fund through cost saving and revenue producing amendments" to the Act. COMMITTEE ON HOUSING AND ECONOMIC DEVELOPMENT, BILL 5–57, THE "DISTRICT OF COLUMBIA UNEMPLOYMENT COMPENSATION ACT AMENDMENTS OF 1983" 2 (Feb. 9, 1983) [hereinafter cited as COMMITTEE REPORT]. A primary feature of the 1983 amendments was the strengthening of provisions dealing with the durational disqualification for benefits of employees who voluntarily quit or were discharged for misconduct. Under these amended provisions, in order for employees to requalify for benefits after voluntarily quitting or being discharged for miscon-

---

**10.** A parallel regulation, 18 DCRR § 4612.1 (1982), instructs the Director to disqualify from benefits any individual who "left his most recent work voluntarily without good cause connected with the work." Again, this provision does not indicate who may raise this issue.

**11.** Also, hearings conducted pursuant to the Act must conform to the requirements of the DCAPA, which gives each party to a contested case the right to submit direct and rebuttal evidence, and to conduct "such cross-examination as may be required for a full and true disclosure of the facts." D.C.Code § 1–1509(b) (1981).

duct, they must work at least ten weeks and earn ten times their weekly benefit amount. D.C.Code § 46–111(a)–(b) (1984 Supp.).

While the Act provides among the most generous benefit amounts in the nation, the "durational disqualification" provisions, contained in the recent legislative reforms, are some of the most stringent.[12] The purpose stated in the Report for the harsh penalties was the need for the city to "approve provisions designed to promote the solvency of the Trust Fund." COMMITTEE REPORT, *supra*, at 4.[13]

Thus, in enacting the 1983 amendments to the Act, the City Council evinced a clear intent to preserve the solvency of the Fund. Our decision to allow a non-final employer to develop the circumstances of a claimant's termination from the final employer is consistent with this intent because it reduces the likelihood that ineligible claimants will be awarded benefits. Thus, the result reached here helps to protect the scarce resources of the Fund.

 Our holding recognizing the right of a non-final base period employer, in the absence of the final employer, to develop evidence on the circumstances of a claimant's termination from the final employer is necessarily limited by the hearing requirements of the DCAPA, D.C.Code § 1–1509(b) (1981), and the Act, D.C.Code § 46–112(e) (1981). This right is also limited by the presumption of involuntary separation accorded claimants in appeal hearings. 18 DCRR § 4612.3 (1982);[14] *Thomas v. District of Columbia Department of Labor*, 409 A.2d 164, 174 (D.C.1979). A fair hearing requires that the confrontation rights of claimants be protected; in particular, that they be allowed to cross-examine the persons who supply the evidence presented against them. 18 DCRR § 4608.10 (1982); *Hawkins v. District Unemployment Compensation Board*, 381 A.2d 619, 623 (D.C.1977); *General Railway Signal Co. v. District Unemployment Compensation Board*, 354 A.2d 529, 532 (D.C.1976).[15] Because claimants are accorded the presumption in appeal hearings that they involuntarily quit their final employer, it is the responsibility of the non-final employer—and not the claimant—to present evidence concerning the circumstances of the claimant's final termination.[16] Thus, while leaving it to the agency to implement our holding,[17] we recognize

12. As of 1982, of 53 jurisdictions (including D.C., Puerto Rico, and the Virgin Islands), only 11 required earnings of ten (or more) times the benefit amount to requalify for unemployment compensation benefits. No other jurisdiction imposed both a ten times weekly benefit earnings test and a ten-week reemployment requirement. U.S. DEPARTMENT OF LABOR, COMPARISON OF STATE UNEMPLOYMENT INSURANCE LAWS 4–27, 4–28 (Jan. 3, 1982).

13. At the time the Council considered the March 1983 amendments, the Trust Fund was facing a projected deficit as of December 30, 1983, as high as $74 million. COMMITTEE REPORT, *supra*, at 2. The D.C. Council was advised by the Department of Employment Services that the temporary durational disqualification provisions resulted in a $5.1 million cost savings in 1982. *Id.* at 5.

14. 18 DCRR § 4612.3 (1982) provides, "A leaving shall be presumed to be involuntary unless the claimant acknowledges that the leaving was voluntary or the employer presents evidence sufficient to support a finding by the Director that the leaving was voluntary."

15. We have noted, however, that hearings conducted by the Appeals Examiner are not governed by the rules of evidence, D.C.Code § 46–112(c) (1981); *Jones v. District of Columbia Unemployment Compensation Bd.*, 395 A.2d 392, 399 (D.C.1978), and that hearsay evidence, if probative, is admissible. *See General Railway Signal Co. v. District Unemployment Compensation Bd.*, *supra*, 354 A.2d at 532.

16. Our holding, therefore, does not alter a claimant's responsibilities under prior interpretations of the Act to rebut assertions that the final termination was voluntary. Nor does our holding grant the non-final base period employer access to information in the Office's records for use as the basis for questioning claimant.

17. The Department of Employment Services may wish to implement a procedure whereby non-final base period employers receive notice prior to the hearing of the identity of claimant's final employer. This would have the effect of avoiding continuances.

that the right of a non-final employer to develop evidence on the claimant's final termination is limited primarily to questioning the claimant on the circumstances of final termination, and presenting witnesses representing the final employer to testify as to the circumstances of this termination.[18]

For the reasons stated herein, we remand for a hearing at which petitioner can be afforded the opportunity to develop and present evidence, within the limits outlined above, on the circumstances of claimant's final termination.[19]

*So ordered.*

---

**18.** In implementing our holding, the Appeals Examiner may, under appropriate circumstances, exercise the subpoena power granted under D.C.Code § 46–114(g)–(i) (1981). However, our holding does not require the Examiner to subpoena all witnesses requested by the non-final employer. We have recognized that the issuance of subpoenas is discretionary with the Examiner. *Thomas v. District of Columbia Dep't of Labor, supra,* 409 A.2d at 168; *see also*

*Jones v. District of Columbia Dep't of Employment Services,* 451 A.2d 295, 297–98 (D.C.1982).

**19.** Petitioner's final argument that its rights were violated when it was denied access to claimant's wage records is without merit. The record shows that the Appeals Examiner went off the record, returned, and placed the wage figures reported by Tucker, Flyer in the record. Thus, petitioner lacks even a bare factual basis for raising this claim.