**Randolph J. GREEN, Jr., Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

No. 84–1364.

District of Columbia Court of Appeals.

Argued July 9, 1985.

Decided Oct. 21, 1985.

---

James E. Turner, Washington, D.C., for petitioner.

N. Denise Wilson-Taylor, Washington, D.C., for respondent.

Before NEBEKER, FERREN, and BEL-SON, Associate Judges.

BELSON, Associate Judge:

Petitioner seeks review of the decision of the District of Columbia Department of Employment Services (DOES) disqualifying him from receiving unemployment compensation on the ground that he had left his most recent work voluntarily without good cause connected with the work. D.C.Code § 46–111(a) (1984 Supp.). The record bears out petitioner's assertion that DOES misallocated to him the burden of proof on the question of the voluntariness of his leaving. We rule that the burden of proving voluntariness, in cases where the issue is disputed, resides with the employer, not with the claimant. Accordingly, we reverse and remand for further proceedings.

I

Petitioner resigned his position as a stock clerk with the Hecht Company in May 1984, ending 3 years of employment there. In his Termination Report/Exit Interview the reasons he stated for his termination were that he had been "[v]ery unhappy, not treated right in so many ways, no salary increase for last 8 months, no future." Shortly thereafter he applied to DOES for unemployment compensation. On his application he indicated that he resigned because he had been dissatisfied with his job. The Claims Examiner determined that petitioner's resignation had been voluntary and without good cause, and disqualified him from benefits. When he appealed that decision and requested a hearing, petitioner indicated for the first time that he had quit because he was going to be fired.

A hearing was then conducted by an Appeals Examiner. In attendance were petitioner and Ms. Pat Wright, the employer's personnel director. Ms. Wright introduced documentary evidence showing that during the 5 months prior to his resignation petitioner had been admonished four times for absenteeism, tardiness, and leaving work without authorization. After the second incident petitioner had been placed on 30-day probation; after the third he had been put on "final warning"; and after the fourth he had been informed that "If this happens again termination will be recommended." Wright testified that, on the day petitioner resigned, his supervisor was preparing papers on yet another charge, again concerning petitioner's attendance and punctuality.

Petitioner insisted repeatedly at the hearing that he did not leave voluntarily but rather quit because he was about to be fired. He testified that his supervisor told him to resign first before he got fired because a dismissal would look bad on his record. Petitioner proceeded to the Personnel Office and there asked Ms. Wright whether he was "on the verge of getting fired." He testified that she replied that "she couldn't tell me nothing right then."

She explained, he said, that a final decision about his dismissal was for her to make. Petitioner then asked her whether or not he should resign. Wright responded that it was his personal decision to make as an employee and that she could not steer him in one direction or another on a voluntary resignation. Petitioner then went back and inquired of his supervisor, who told him that he "was on the verge of getting fired." With that, petitioner resigned. As he signed the termination papers, petitioner stated to Wright that "I want to resign before you fire me." Petitioner subsequently sought, without success, to withdraw his resignation.

Wright's account of her conversation with petitioner on the day of his termination differed from his in two crucial respects. Contrary to petitioner's express denial on this matter, Wright testified that, in reply to petitioner's question whether he was about to be fired, "I said a decision has not been made on that at this point. Reminding you that were you [sic] on termination notice of final warning." Wright further testified that, when petitioner asked whether or not he should resign, she told him that "considering your length of services [sic] with the company ... you should give this serious consideration." This, too, petitioner denied.

Upon cross-examination by Wright at the hearing, petitioner recounted that during the month prior to his termination he had held several conversations with Wright in her office. Petitioner had been unhappy about his position and had requested a transfer to another department. Wright counseled him that promotions and transfers were based on performance and that his past record was not such as to permit consideration of petitioner for a transfer. Wright explained to him, however, that if he performed well and was dependable and prompt he would be considered in the future for a transfer.

The Appeals Examiner affirmed the decision of the Claims Examiner disqualifying petitioner from benefits on the ground that

he voluntarily quit his job without good cause connected with the work. The Appeals Examiner concluded that petitioner

> was not terminated by employer, but elected to voluntarily resign in light of the poor work record that he had recently developed, and with an eye towards avoiding having a negative employment record, should he have been fired. However, there is no firm indication in the record that he was in fact going to be fired, although his performance was less than expected.

The Office of Appeals and Review affirmed, stating: "As of the time of claimant's leaving, there was no showing of any imminence of termination. Claimant acted prematurely. Further, there was no showing claimant was in a position of having to quit or risk being fired."

## II

Petitioner assigns as error the statement by the Appeals Examiner, made at the outset of the hearing, that "the burden of proof in voluntary quit cases rests solely on the claimant ..." Petitioner contends that this statement constituted a misallocation of the burden of proof in contravention of the applicable DOES regulation which provides that

> A leaving shall be presumed to be involuntary unless the claimant acknowledges that the leaving was voluntary or the employer presents evidence sufficient to support a finding by the Director that the leaving was voluntary.

18 DCRR § 4612.3 (1983).

The term "burden of proof" is ambiguous, encompassing two separate burdens: the burden of production and the burden of

persuasion. *See generally* McCORMICK ON EVIDENCE § 336 (E. Cleary 3d ed. 1984); 9 J. Wigmore, EVIDENCE §§ 2485–2488 (Chadbourn rev.1981). The former refers to the burden of coming forward with satisfactory evidence of a particular fact in issue. McCORMICK, *supra*, at § 336. The latter constitutes the burden of persuading the trier of fact that the alleged fact is true. *Id.* The phrase "burden of proof" is generally interpreted to mean burden of persuasion. *See People's Counsel v. Public Service Commission,* 474 A.2d 835, 837 n.5 (D.C.1984); *see also Nader v. de Toledano,* 408 A.2d 31, 48 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). We read the Appeals Examiner's remarks to have referred to the burden of persuasion.

In our leading case on the issue of voluntary leaving, *Thomas v. District of Columbia Department of Labor,* 409 A.2d 164 (D.C.1979), we stated unequivocally that a claimant does not have the burden of proving involuntariness. *Id.* at 174. The burden, rather, lies with the employer to prove the leaving was voluntary where voluntariness is contested. The DOES regulation in effect at the time *Thomas* was decided, predecessor of the present 18 DCRR § 4612.3, *supra,* provided that "Ordinarily a leaving will be presumed to be *involuntary* on the part of the claimant unless the facts clearly indicate otherwise." 18 DCRR § 301.1(a) (1970) (emphasis in original). Although the language of the current regulation differs somewhat from that of the old, we discern no departure sufficient to compel a contrary conclusion about the allocation of the burden of proof.[1]

1. Other jurisdictions are divided on the question as to which party bears the burden of proving that an employee's leaving was voluntary. Several assign the burden to the employer. *E.g.,* Minnesota: *Marz v. Department of Emp't Servs.,* 256 N.W.2d 287, 289 (Minn.1977); *accord Armar Corp. v. Malinski,* 362 N.W.2d 10, 12 (Minn. Ct.App.1985); *Brunello v. Mill City Auto Body,* 348 N.W.2d 409, 410 (Minn.Ct.App.1984); *Salamon v. Time Share Computer Sys., Inc.,* 341 N.W.2d 300, 302 (Minn.Ct.App.1983); South Dakota: *In re Johnson,* 337 N.W.2d 442, 446 (S.D.

1983); West Virginia: *Bennett v. Hix,* 139 W.Va. 75, 84, 79 S.E.2d 114, 119 (W.Va.1953); Wisconsin: *Holy Name School v. Department of Indus., Labor & Human Relations,* 109 Wis.2d 381, 388, 326 N.W.2d 121, 125 (Wis.Ct.App.1982).

Other jurisdictions, however, place the burden of proving involuntariness on the employee. *See, e.g.,* Alabama: *Department of Indus. Relations v. Jaco,* 337 So.2d 374, 376 (Ala.Civ.App. 1976); *State Dep't of Indus. Relations v. Thomas,* 55 Ala.App. 712, 714–15, 318 So.2d 739, 741

The regulatory presumption that a claimant's separation from work was involuntary is a rebuttable one. *Perkins v. District of Columbia Department of Employment Services*, 482 A.2d 401, 402 (D.C. 1984); *Harris v. District of Columbia Department of Employment Services*, 476 A.2d 1111, 1112–13 (D.C.) (per curiam), cert. denied, —— U.S. ——, 105 S.Ct. 200, 83 L.Ed.2d 132 (1984); *Hockaday v. District of Columbia Department of Employment Services*, 443 A.2d 8, 10 (D.C.1982); see *Carpenter v. District Unemployment Compensation Board*, 409 A.2d 175, 178 (D.C.1979); *Thomas*, 409 A.2d at 173–74. This simply means that the party against whom the presumption operates, *viz.* the claimant's former employer, may introduce proof in contradiction. McCORMICK, *supra*, § 342. However, under the so-called "bursting bubble" theory of presumptions, once the opponent offers evidence against the fact presumed, the presumption vanishes. *Davis v. Altmann*, 492 A.2d 884, 886 (D.C.1985); *Legille v. Dann*, 178 U.S.App. D.C. 78, 82–84, 544 F.2d 1, 5–7 (1976); see *generally* McCORMICK, *supra*, § 344(A); 9 WIGMORE, *supra*, §§ 2487, 2491, 2493a. In other words, the presumption places on the opponent only the burden of production of evidence. This theory had been described as being "the prevailing view, to which jurists preponderantly have subscribed." *Legille*, 178 U.S.App.D.C. at 83, 544 F.2d at 6.

Nevertheless, the courts of this jurisdiction do recognize exceptions to the "bursting bubble" theory. In *Altmann*, we recently observed that " 'some presumptions are founded in part upon exceptionally strong and visible policies, which have been said to persist despite proof rebutting the factual basis for the presumption.' " 492 A.2d at 886 (quoting *Legille*, 178 U.S.App. D.C. at 84 n. 39, 544 F.2d at 7 n. 39); see *generally* McCORMICK, *supra*, § 344(A), at 975–76. Such presumptions impose on the parties against whom they operate not only the burden of production but the burden of persuasion as well. For example, at issue in *Altmann* was the presumption that a joint bank account is opened for the convenience of the party who opens it for himself and another person without consideration. 492 A.2d at 885. The court determined that the presumption rests on public policy considerations "of the highest magnitude": "the need to prevent fraud, overreaching, and deceit, often culminating after the other party to the transaction is dead." *Id.* at 887. Thus the presumption places the burden of persuading the factfinder that a transfer of funds was an *inter vivos* gift on the person claiming gift. *Id.* at 885. Similarly, other presumptions buttressed by weighty social policies have been held to operate to fix the burden of persuasion on the party controverting the presumed fact: *e.g.*, the presumption that where there is more than one marriage the most recent is valid;[2] the statutory presumption that the owner of a motor vehicle

---

(1975); Delaware: *Ridings v. Unemployment Ins. App. Bd.*, 407 A.2d 238, 239 (Del.Super.Ct. 1979); Indiana: *Gray v. Dobbs House, Inc.*, 171 Ind.App. 444, 450, 357 N.E.2d 900, 905 (1976); Missouri: *Bussmann Mfg. Co. v. Industrial Comm'n*, 335 S.W.2d 456, 461 (Mo.Ct.App.1960); Montana: *Ollila v. Reeder*, 148 Mont. 134, 137–38, 417 P.2d 473, 475 (1966); North Carolina: *In re Werner*, 44 N.C.App. 723, 725, 263 S.E.2d 4, 6 (1980); Pennsylvania: *Torsky v. Commonwealth Unemp't Comp. Bd. of Review*, 81 Pa.Cmwlth. 642, 647–48, 474 A.2d 1207, 1210 (1984); *Miller v. Commonwealth Unemp't Comp. Bd. of Review*, 60 Pa.Commw. 410, 411, 431 A.2d 1138, 1139 (1981); *Bowman v. Commonwealth Un-*

*emp't Comp.Bd. of Review*, 49 Pa.Commw. 170, 172, 410 A.2d 422, 423 (1980).

2. *Johnson v. Young*, 372 A.2d 992, 994 (D.C. 1977) ("While the presumption is not conclusive, it is one of the strongest in the law, and it is settled that the party attacking the second marriage has the burden of rebutting the presumption by strong, distinct, satisfactory, and conclusive evidence."); *Mayo v. Ford*, 184 A.2d 38, 41 (D.C.1962) (presumption is grounded, in part, "in the strong public policy of fostering respectability and protecting offspring from the taint of illegitimacy"); *Harsley v. United States*, 88 U.S.App.D.C. 150, 151, 187 F.2d 213, 214 (1951).

has consented to the operator's use;[3] and the presumption that death is caused by accident rather than by suicide.[4]

Substantial policy considerations underlie the presumption of involuntariness. "[T]he basic purpose of the [District of Columbia Unemployment Compensation Act, D.C. Code §§ 46–101 to 46–127] is to protect employees against economic dependency caused by temporary unemployment and to reduce the necessity of relief or other welfare programs." *Von Stauffenberg v. District Unemployment Compensation Board,* 269 A.2d 110, 111 (D.C.1970), *aff'd,* 148 U.S.App.D.C. 104, 459 F.2d 1128 (1972); *accord Thomas,* 409 A.2d at 170; *Gordon v. District Unemployment Compensation Board,* 402 A.2d 1251, 1255 n. 6 (D.C.1979), *Jones v. District of Columbia Unemployment Compensation Board,* 395 A.2d 392, 395 (D.C.1978); *Williams v. District Un-*

*employment Compensation Board,* 383 A.2d 345, 349 (D.C.1978); *see also District Unemployment Compensation Board v. Wm. Hahn & Co.,* 130 U.S.App.D.C. 254, 257, 399 F.2d 987, 990 (1968). As we stated in *Thomas:*

> More precisely, the act ... was designed to provide income for workers who are unemployed through no fault of their own until they find new work or at least for a statutorily defined period.... Generally, the statute should be construed liberally, whenever appropriate to accomplish the legislative objective of minimizing the economic burden of unemployment.

409 A.2d at 170–71 (citations omitted); *accord Hamel & Park v. District of Columbia Department of Employment Services,* 487 A.2d 603, 606 (D.C.1985).[5]

**3.** *Alsbrooks v. Washington Deliveries, Inc.,* 281 A.2d 220, 221 (D.C.1971) (interpreting D.C.Code § 40–424 (1967) [superseded by D.C.Code § 40–408 (1984 Supp.)]); *Eastern Aquatics, Inc. v. Washington,* 213 A.2d 293, 294 (D.C.1965); *Joyner v. Holland,* 212 A.2d 541, 542 (D.C.1965); *Miller v. Imperial Ins., Inc.,* 189 A.2d 359, 360 (D.C.1963) ("Mere credible evidence or evidence which is contradictory or subject to contradictory interpretations is not sufficient to overcome the presumption."); *Farrall v. Ellis,* 157 A.2d 127, 128 (D.C.1960) (owner must offer positive, unequivocal and uncontradicted testimony that the automobile was not at the time of the accident being used with permission); *Williams v. Rawling Truck Line,* 123 U.S.App.D.C. 121, 125, 357 F.2d 581, 585 (1965) (per curiam) (statutory presumption "designed to protect the persons and property of District residents by encouraging safe driving and by providing injured parties with potential defendants").

**4.** *Somerville v. The Knights Templar and Masons' Life Indem. Ass'n,* 11 App.D.C. 417, 423 (1897); *see National Union v. Thomas,* 10 App. D.C. 277, 290 (1897) (insurer bears burden of proving suicide); *see also Dick v. New York Life Ins. Co.,* 359 U.S. 437, 443, 446, 79 S.Ct. 921, 925, 927, 3 L.Ed.2d 935 (1959) (applying North Dakota common law rule which imposed on defendant insurance company, defending against the operation of an accidental death clause, the burden of persuading the jury that the insured's death was due to suicide).

**5.** This court's understanding of the policies animating the unemployment compensation program is consistent with the view expressed by

the Supreme Court respecting the federal-state cooperative unemployment insurance provisions of the Social Security Act, 42 U.S.C. §§ 501–503 (1982):

> The objective of Congress was to provide a substitute for wages lost during a period of unemployment not the fault of the employee.
>
> ....
>
> ... The purpose of the Act was to give prompt if only partial replacement of wages to the unemployed, to enable workers "to tide themselves over, until they get back to their old work or find other employment, without having to resort to relief." Unemployment benefits provide cash to a newly unemployed worker "at a time when otherwise he would have nothing to spend," serving to maintain the recipient at subsistence levels without the necessity of his turning to welfare or private charity. Further, providing for "security during the period following unemployment" was thought to be a means of assisting a worker to find substantially equivalent employment.... Finally, Congress viewed unemployment insurance payments as a means of exerting an influence upon the stabilization of industry.

*California Dep't of Human Resources Dev. v. Java,* 402 U.S. 121, 130–32, 91 S.Ct. 1347, 1353–54, 28 L.Ed.2d 666 (1971) (footnote citations to legislative history omitted); *see also Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 515–18, 57 S.Ct. 868, 875–76, 81 L.Ed. 1245 (1937) (discussing relief of unemployment as a public purpose).

■ The particular nature of the voluntariness inquiry yields a further policy reason to fix the burdens of production and persuasion on the employer in any proceeding in which voluntariness is a contested issue. A determination of voluntariness requires evidence "that the leaving was voluntary *in fact,* within the ordinary meaning of the word 'voluntary.'" 18 DCRR § 4612.2 (emphasis in original). "If 'the employee's action was compelled by the employer rather than based on the employee's volition,' it was not taken voluntarily." *Bowen v. District of Columbia Department of Employment Services,* 486 A.2d 694, 697 (D.C.1985) (quoting *Hockaday,* 443 A.2d at 10); *Gopstein v. District of Columbia Department of Employment Services,* 479 A.2d 1278, 1280 (D.C.1984); *Harris,* 476 A.2d at 1113; *Giesler v. District of Columbia Department of Employment Services,* 471 A.2d 246, 247 (D.C. 1983). This court deems involuntary a resignation in the face of imminent discharge. *Carpenter,* 409 A.2d at 178; *Thomas,* 409 A.2d at 171–74; *accord Bowen,* 486 A.2d at 697; *Perkins,* 482 A.2d at 402–03; *see also Hill v. District of Columbia Department of Employment Services,* 467 A.2d 134, 135 (D.C.1983) (initiation of involuntary psychiatric disability retirement proceedings does not constitute a threat of imminent termination). " 'For a threatened termination to be "imminent," the prospect of termination must be real....' " *Bowen,* 486 A.2d at 697–98 (quoting *Perkins,* 482 A.2d at 403 n. 3); *see also Thomas,* 409 A.2d at 172–73 (there must be "actual imminence of a feared discharge" to render a leaving involuntary). Whether a discharge is, indeed, imminent is a matter more likely to be within the knowledge of the employer than of the employee. *See, e.g., Perkins,* 482 A.2d at 403 n. 3.[6] Considerations of fairness argue for placement on the employer of the burden of establishing facts about an employee's discharge under such

circumstances. *See United States v. New York, New Haven & Hartford Railroad Co.,* 355 U.S. 253, 256 n. 5, 78 S.Ct. 212, 214 n. 5, 2 L.Ed.2d 247 (1957); *Browzin v. Catholic University of America,* 174 U.S. App.D.C. 60, 66, 527 F.2d 843, 849 (1975); *International Harvester Co. v. Ruckelshaus,* 155 U.S.App.D.C. 411, 439, 478 F.2d 615, 643 (1973); *see also Bazemore v. Davis,* 394 A.2d 1377, 1381 (D.C.1978) (en banc) (one of the principal reasons for the creation of presumptions is "to correct an imbalance resulting from a party's superior access to the proof").

■ Our conclusion that the employer bears the burden of proving voluntariness comports with the legislative design of the Unemployment Compensation Act. Section 9 of the Act, D.C.Code § 46–110, is captioned "Eligibility for benefits"; section 10, *id.* § 46–111, "Disqualification for benefits." *See National Broadcasting Co. v. District Unemployment Compensation Board,* 380 A.2d 998, 999 (D.C.1977) (distinguishing eligibility from disqualification determination); *Woodward & Lothrop, Inc. v. District of Columbia Unemployment Compensation Board,* 129 U.S.App.D.C. 155, 157, 159, 392 F.2d 479, 481, 483 (1968) (same). To be eligible for benefits under section 9, a claimant must demonstrate, *inter alia,* that he has made a claim for benefits pursuant to applicable regulations, that he has been paid the requisite wages for employment, that he is physically able to work, and that he is available for work. D.C.Code § 46–110. "The burden is upon the claimant to adduce sufficient evidence of his eligibility." *Cumming v. District Unemployment Compensation Board,* 382 A.2d 1010, 1015 (D.C.1978).

Section 10, by contrast, sets forth the conditions under which a claimant shall be disqualified for benefits. D.C.Code § 46–111. The most frequently litigated of the conditions are voluntary leaving without

---

**6.** In *Perkins,* the petitioner's supervisor sought to present the petitioner with a certain letter. The court suggested the inference that petitioner, fearing it was a letter of termination, announced that she would resign before her supervisor could tell her of its contents. The letter, however, was a notice of a 10-day suspension, not a discharge. 482 A.2d at 403 & n. 3.

good cause, *id.* § 46–111(a), and misconduct, *id.* § 46–111(b). The burden of proving disqualifying misconduct is on the employer. 18 DCRR § 4613.2; *Curtis v. District of Columbia Department of Employment Services*, 490 A.2d 178, 179 (D.C. 1985); *Colton v. District of Columbia Department of Employment Services*, 484 A.2d 550, 553 (D.C.1984); *Keep v. District of Columbia Department of Employment Services*, 461 A.2d 461, 463 (D.C.1983) (per curiam); *Hawkins v. District Unemployment Compensation Board*, 381 A.2d 619, 622 (D.C.1977) (per curiam); *Green v. District Unemployment Compensation Board*, 346 A.2d 252, 255 (D.C.1975); *Simmons v. District Unemployment Compensation Board*, 292 A.2d 797, 800 (D.C. 1972). Likewise, the burden of establishing the voluntariness of an employee's separation from work also should rest with the employer.[7]

■■■ The quantum of proof required to satisfy this burden is, as in most civil cases, a fair preponderance of the evidence. *See Myrick v. National Savings & Trust Co.*, 268 A.2d 526, 527 (D.C.1970); *Edwards v. Mazor Masterpieces, Inc.*, 111 U.S.App. D.C. 202, 204, 295 F.2d 547, 549 (1961). If it is found that the employee resigned under threat of imminent termination, the separation is treated as a constructive discharge for misconduct, 18 DCRR § 4612.8; if the employer asserts that there were grounds for discharge for misconduct, a separate finding on the question of misconduct must then be made, *id.*, and the employer, again, bears the burden of proof,

*id.* § 4613.2. On the other hand, if it is found that the employee left work voluntarily, he may be awarded compensation only if the examiner is convinced by a preponderance of the evidence that the employee left work for "good cause connected with the work." 18 DCRR § 4612.4; *Perkins*, 482 A.2d at 402; *Harris*, 476 A.2d at 1113. A claimant becomes entitled to receive benefits if he demonstrates that he did what a reasonable and prudent person in the labor market would do in the same circumstances. 18 DCRR § 4612.5; *Kramer v. District of Columbia Department of Employment Services*, 447 A.2d 28, 30 (D.C.1982) (per curiam); *see also* 18 DCRR §§ 4612.6, 4612.7 (listing reasons that do and do not constitute good cause connected with the work for voluntary leaving).

Our review of the record convinces us that this is a case where proper assignment of the burden of proof assumed crucial significance. The question of voluntariness was a close one. There was evidence from which the Appeals Examiner could have found, on the one hand, that petitioner had resigned in the face of a "quit or be fired" ultimatum or, on the other hand, that he instead had been told in effect to "shape up or ship out." The former would suggest that the leaving was involuntary, *Carpenter*, 409 A.2d at 178; *Thomas*, 409 A.2d at 171–73, while the latter compels a conclusion of voluntary resignation,[8] *Bowen*, 486 A.2d at 698; *Thomas*, 409 A.2d at 173. The facts of the case at bench do not square neatly with our prior holdings. Un-

---

7. Because an employer's contribution to the District Unemployment Fund, D.C.Code § 46–102 (1981), is affected by the claims experience of its employees, *id.* § 46–103 (1981 & 1984 Supp.); *Hamel & Park*, 487 A.2d at 605–06; *American Univ. v. District of Columbia Dep't of Labor*, 429 A.2d 1374, 1375 (D.C.1981) (per curiam), a disqualification may be considered analogous to an affirmative defense. The burden of proving an affirmative defense rests with the party asserting it. *Weaver v. Du Pont*, 119 A.2d 716, 717 (D.C.1956); *Tendler v. Jaffe*, 92 U.S.App.D.C. 2, 6, 203 F.2d 14, 18 (on rehearing), *cert. denied*, 346 U.S. 817, 74 S.Ct. 29, 98 L.Ed. 344 (1953); *see also National Rifle Ass'n v. Ailes*, 428 A.2d 816, 821 (D.C.1981) (qualification of agreement

entitling employee to right to monetary compensation for accumulated leave); *Marshall v. District of Columbia*, 391 A.2d 1374, 1380 (D.C. 1978) (justification and legal authority for false arrest and battery); *Pekofsky v. Blalock*, 175 A.2d 604, 605 (D.C.1961) (statute of limitations); *Callaway v. Hamilton Nat'l Bank of Washington*, 90 U.S.App.D.C. 228, 235, 195 F.2d 556, 562–63, (1952) (apparent authority, estoppel and laches).

8. For this reason we reject petitioner's contention that the conclusion that his termination was voluntary was not supported by substantial evidence. D.C.Code § 1–1510(a)(3)(E).

like *Thomas* and *Carpenter*, in which this court reversed determinations of disqualification, the employer here came forward with evidence to show that when petitioner resigned a decision had not yet been made to fire him. Furthermore, unlike *Perkins* and *Bowen*, where we affirmed determinations of disqualification, petitioner in this case adduced evidence tending to support a finding that he reasonably believed his firing to be forthcoming.

We find nothing in the record to dispel the inference that both the Appeals Examiner and the Office of Appeals and Review decided this case on the assumption that, as the Appeals Examiner said at the hearing, petitioner bore the burden of proof on the question of voluntariness. Whether they would have reached the same conclusions had they properly allocated the burden of proof, we cannot say. Because the burden was misallocated, the decision of DOES is "not in accordance with law," D.C.Code § 1–1510(a)(3)(A) (1981); *see id.* § 46–113 (our standard of review in unemployment compensation cases is governed by the District of Columbia Administrative Procedure Act). Accordingly, this case is

*Reversed and remanded for further proceedings consistent with this opinion.*