Gilbert S. BOWEN, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.

No. 83–506.

District of Columbia Court of Appeals.

Submitted Nov. 26, 1984.

Decided Jan. 9, 1985.

Harry Heller, Washington, D.C., was on brief for petitioner.

N. Denise Wilson-Taylor, Washington, D.C., was on brief for respondent. Grace Lockett Rosner, Washington, D.C., also entered an appearance for respondent.

Before MACK and TERRY, Associate Judges, and PAIR, Associate Judge, Retired.

TERRY, Associate Judge:

Petitioner asks us to reverse a decision by the Department of Employment Services that he is ineligible for unemployment benefits. We reject all his arguments and affirm the decision under review.

I

Petitioner resigned from his position as a program auditor with the General Accounting Office (GAO) on December 10, 1982, and applied for unemployment compensation three days later. His application included a signed statement that he "voluntarily left [his] employment there [at GAO] due to medical [and] personal reasons." The medical reasons involved foot and back problems of undetermined origin which, he said, were "aggravate[d]" by his job. He did not elaborate on the "personal" reasons, but the claims deputy found that they were based on his failure to gain a promotion. Concluding that petitioner had resigned voluntarily without good cause connected with his work, she ruled him ineligible for benefits.

When petitioner appealed from the deputy's ruling, a hearing was held before an appeals examiner.[1] Petitioner testified that he resigned because his supervisor told him in September 1982 that he "was going to be discharged." He and his supervisor worked out an agreement whereby he would immediately submit a written resignation, to take effect in December. He admitted, however, that the supervisor did not say when he would be fired if he did not resign: "There was no time frame." Questioned about his signed statement that he had quit voluntarily, petitioner conceded that he could have continued working at GAO, but he implied that this option would have been unpalatable: "I had been with GAO for four years and ... I had received no promotions, no step increases and ... in order to be transferred from New York State to Washington I had to file a ... discrimination complaint." He also con-

1. The GAO, although notified of the hearing, did not send a representative to testify.

firmed that he had a medical reason for resigning, but he admitted that no doctor had advised him to quit work; his efforts to resign on the ground of disability had been unsuccessful. Further, he acknowledged that his "personal" reason for resigning was simply the fact that he had failed to receive either a promotion or a salary increase.

The appeals examiner found that petitioner had resigned "after being told that he faced involuntary separation at some unspecified future date if he did not do so. He was not threatened with imminent discharge at the time of his resignation." The examiner also found that petitioner's resignation "was substantially influenced by medical problems and failure to receive a promotion," but that he "was not advised to leave his job for reasons of health." Thus the examiner concluded that petitioner had voluntarily resigned from his job without good cause:

> Although he understood that he faced termination proceedings at some indefinite future time, he was in no immediate danger of discharge at the time of his resignation, nor was he medically advised to leave his job for reasons of health. Under the circumstances, it would have been more prudent for him to retain the security of the job he had [as] long as he could or until he found a better one.

The claims deputy's denial of unemployment benefits was therefore affirmed.

Petitioner appealed to the Office of Appeals and Review (OAR). With his appeal he enclosed a letter from the GAO's regional manager stating that petitioner "had been advised his performance was not of an acceptable level and that if his performance continued at that level, management would begin termination action. After having been informed of this situation, [petitioner] signed a resignation...." When the OAR proposed to affirm the decision of the appeals examiner, petitioner again en-

closed the same letter with his objections to the proposed ruling. The OAR then issued a final decision affirming the appeals examiner's determination, noting that petitioner's objections had been considered.

In this court petitioner contends that the presumption that his resignation was involuntary was not overcome, that in fact it was involuntary, and that the appeals examiner erred in concluding that it would have been "more prudent for him to retain" his job until he found a new one. All of these arguments boil down to a challenge to the sufficiency of the evidence on which the Department based its decision. The only question presented to the court, then, is a familiar one: whether the decision was supported by substantial evidence.

## II

Appellant's claim for benefits is governed by section 10(a) of the District of Columbia Unemployment Compensation Act, D.C. Code § 46–111(a) (1981), *as amended by* the Unemployment Trust Fund Revenue and Conformity Act of 1982, D.C. Law 4–147, § 2(h), 29 D.C.Reg. 3347, 3355–56. That section, at the time of petitioner's resignation, provided in pertinent part:

> [A]ny individual who left his most recent work voluntarily without good cause connected with the work, as determined under duly prescribed regulations, shall not be eligible for benefits until he has been employed in each of four subsequent weeks (whether or not consecutive) and has earned remuneration equal to not less than four times the weekly benefit amount to which he would be entitled pursuant to [D.C. Code § 46–108(b) (1981)].

This provision, like its successors,[2] effectively prevents those who leave their work voluntarily with no good job-related reason from ever collecting unemployment benefits during the course of that unemploy-

---

**2.** The statute has been amended twice since 1982. The four-week disqualification has been increased to ten weeks, but otherwise the perti-

nent language has not been changed. *See Brice, supra,* 472 A.2d at 407–408 & n. 2.

ment. *See Brice v. District of Columbia Department of Employment Services*, 472 A.2d 406 (D.C.1984).

 Under applicable regulations, one who claims unemployment benefits is presumed to have left his job involuntarily "unless the claimant acknowledges that the leaving was voluntary or the employer presents evidence sufficient to support a finding by the [Department] that the leaving was voluntary." 18 DCRR § 4612.3 (1982). Further, a finding of voluntariness depends upon evidence "that the leaving was voluntary *in fact*, within the ordinary meaning of the word 'voluntary.' " 18 DCRR § 4612.2 (1982) (emphasis in original). If "the employee's action was compelled by the employer rather than based on the employee's volition," it was not taken voluntarily. *Hockaday v. D.C. Department of Employment Services*, 443 A.2d 8, 10 (D.C.1982). Thus this court has reversed the denial of benefits to claimants who resigned in the face of imminent discharge. *Carpenter v. District Unemployment Compensation Board*, 409 A.2d 175 (D.C.1979); *Thomas v. District of Columbia Department of Labor*, 409 A.2d 164 (D.C.1979). On the other hand, if an employee's resignation "was the product of his own volition and not compelled by his employer, it was voluntary within the meaning of the statute and the regulations." *Gopstein v. District of Columbia Department of Employment Services*, 479 A.2d 1278, 1280 (D.C.1984) (citation omitted).

The most imposing evidence that petitioner's resignation was voluntary in fact is the written statement he made in his application for unemployment benefits. On that application he wrote that he had resigned "voluntarily" for "medical [and] personal reasons." He did not even suggest that he had been ordered to resign. While the mere use of the word "voluntarily" is not very probative—even a truly forced resig-

nation is voluntary insofar as the act of termination is that of the employee and not the employer—the reasons he gave for his resignation strongly support a finding of voluntariness.

Petitioner argues, however, that he repudiated the statement in his application when he testified before the appeals examiner and that, in any event, he did not appreciate its legal significance when he made it; thus, he maintains, he cannot be said to have "acknowledged" that he resigned voluntarily. While this argument raises an interesting question as to the meaning of the word "acknowledges" in 18 DCRR § 4612.3, it can hardly support the conclusion that his statement should be disregarded. Ignorance of the legal significance of such a statement is not a bar to its use against the person who made it. While petitioner was free to contradict his earlier statement in his testimony before the appeals examiner, as he did, the appeals examiner was entitled to consider both in making his findings.[3] Otherwise, the interview with the claims deputy would be no more than a dry run for claimants, allowing them to refashion their stories freely after losing before the deputy so as to conform to the law.

 Further evidence that petitioner resigned voluntarily appears in his testimony before the appeals examiner. Although he testified that he had been told he would be fired, he conceded that there was no indication of when that firing might come, and that he could have continued working at GAO in the meantime. In *Thomas, supra*, we held that the examiner could reasonably find that a "quit or be fired" demand by the employer did not make an employee's resignation involuntary if the threatened dismissal was not imminent. 409 A.2d at 172–173. "For a threatened termination to be 'imminent,' the prospect of termination

---

3. "The testimony and exhibits, *together with all papers and requests filed in the proceeding,* and all material facts not appearing in the evidence but with respect to which official notice is tak- en, shall constitute the exclusive record for order or decision." D.C. Code § 1–1509(c) (1981) (emphasis added).

must be real . . . ." *Perkins v. District of Columbia Department of Employment Services,* 482 A.2d 401, 403 n. 3 (D.C.1984). In this case the appeals examiner found that petitioner "was not threatened with imminent discharge at the time of his resignation." From this finding, clearly supported by petitioner's own testimony, the appeals examiner could reasonably conclude that his resignation was voluntary. *Cf. Carpenter, supra,* 409 A.2d at 178. Petitioner's testimony that he did not want to leave the job does not diminish the probative value of the statements which support the appeals examiner's findings.

■■■ Petitioner also contends that the letter from the GAO's regional manager which he submitted to the OAR shows that his resignation was involuntary. In fact, it shows the opposite. The letter states that petitioner was informed that if his performance did not improve, GAO "would begin termination action."[4] This, of course, is the very essence of a "shape up or ship out" warning, to which resignation is a voluntary response. *See Thomas, supra,* 409 A.2d at 173. Furthermore, this letter cannot properly be considered part of the record on review. Petitioner did not submit the letter to the OAR (indeed, it was not even written) until after the appeals examiner had issued his decision. The OAR must base its decision solely on the record that was made before the appeals examiner; it is not empowered to receive additional evidence. *See* D.C. Code § 1–1509(c) (1981).

■■■ Once voluntariness has been established, the examiner must then determine whether the employee resigned for "good cause connected with the work. . . ." D.C. Code § 46–111(a) (1981); 18 DCRR § 4612.4 (1982). On this issue the burden of proof is on the claimant. *Perkins, supra,* 482 A.2d at 402. The test for establishing good cause is what "a reasonable and prudent person in the labor market [would] do in the same circumstances[.]" 18 DCRR § 4612.5 (1982).

■■■ In this case the examiner properly concluded that petitioner did not have good cause.[5] With regard to his foot and back problems, petitioner presented no evidence that he had to resign for medical reasons. He testified that his doctor had not advised him to quit, and there was no showing that he supplied the GAO with any kind of medical statement as required by 18 DCRR § 4612.7(e) (1982). As for his "personal" reasons, petitioner offered no evidence which would compel or even support a finding that a "reasonable and prudent person" would have resigned simply because he had failed to gain a promotion or a salary increase. Finally, petitioner failed to present any evidence whatever which would support a finding that a "reasonable and prudent person" would surrender his job, even upon receipt of a quit-or-be-fired order, when the firing was not imminent and no other job awaited him. The evidence established that this was not really a quit-or-be-fired case at all, but rather a shape-up-or-ship-out case. Petitioner's decision to resign under the circumstances cannot be regarded as the act of a reasonable and prudent person.

*Affirmed.*

---

4. Oddly, petitioner attacks the letter as hearsay only a moment after he cites it as proof that he resigned against his will. The fact that a statement may be hearsay, however, does not make it inadmissible in an administrative proceeding. *General Railway Signal Co. v. District Unemployment Compensation Board,* 354 A.2d 529 (D.C.1976).

5. The appeals examiner based this conclusion on a finding that it would have been "more prudent" for petitioner to keep his job at GAO until he found a better one. This is a patent misapplication of the "reasonable and prudent person" test set forth in 18 DCRR § 4612.5. The issue is whether the claimant's *actual* course of conduct was reasonable and prudent, not whether some other course of conduct would have been *more* prudent. In another case such an error might well lead to reversal. Here, however, since petitioner presented no evidence which would satisfy the test even if correctly applied, the error was harmless. *See* D.C.Code § 1–1510(b) (1981).