**Jaime CRUZ, Jr., Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

No. 92–AA–690.

District of Columbia Court of Appeals.

Submitted Oct. 19, 1993.

Decided Nov. 18, 1993.

---

Jaime Cruz, Jr., pro se.

Laryce Woodyear–Dowe, for respondent.

Before FERREN and SCHWELB, Associate Judges, and PRYOR, Senior Judge.

SCHWELB, Associate Judge:

Petitioner Jaime Cruz, Jr., asks us to review a decision by the Department of Employment Services (DOES) denying him unemployment benefits upon the ground that he voluntarily left his job without good cause connected with the work. Mr. Cruz contends that his resignation was with good cause and, implicitly, that the hearing examiner failed to make sufficient findings. We reverse and remand for further proceedings consistent with this opinion.

## I.

Mr. Cruz worked as a Spanish Coordinator for the United Planning Organization (UPO) in Washington, D.C. from May, 1990 to August, 1991. He resigned on August 9, 1991 to accept the position of Community Outreach Coordinator with the Latino Federation of Tenants Associations (LFTA). He was to start in his new position on August 19, ten days after his resignation. Unfortunately, in the interim, the LFTA's financial condition declined, and the LFTA was compelled to withdraw its offer to Mr. Cruz.

Mr. Cruz immediately applied for unemployment benefits. On his claim form, he marked "5. Reason for Separation: Left Voluntarily," without providing any further explanation.[1] Based on the application, the DOES claims examiner found Mr. Cruz ineligible for benefits because he had left his most recent work for "personal" reasons. Mr. Cruz filed a timely administrative appeal. On December 11, 1991, a DOES appeals hearing examiner held a telephone hearing.

At the hearing, which was quite abbreviated, Mr. Cruz explained his reasons for resigning from UPO as follows: "I left the job because I saw no future number one. Number two, I had a job offer." He testified that UPO had been experiencing severe financial difficulties, that employees had been furloughed, and that he believed, in light of what he characterized as the employer's "economic crises," that his own continued employment was in jeopardy. Mr. Cruz further explained that he had encountered "a lot of resistance to me carrying out my job" from the Executive Director's support staff, and that this "also made it very uncomfortable for my staying at UPO." The employer did not contest any of these allegations, nor did the UPO representative make any closing argument.

The hearing examiner found that Mr. Cruz "left his most recent work of his own volition" for a "personal" reason which was not "objectively job-related or directly connected with the work." The basis for her decision was that "claimant quit his job to accept another position which did not materialize." Acknowledging that "[c]laimant's reason for quitting seemed sufficient to him, and his opinion is entitled to respect," the examiner found that Mr. Cruz had not made a sufficient showing that his voluntary departure was for "good cause connected with the

---

1. The initial claim form states that if the reason for separation is other than lack of work, the claimant should explain fully. Mr. Cruz did not fill out that part of the form.

work." She therefore ruled that Mr. Cruz was disqualified from receiving unemployment benefits. The agency upheld the determination of the hearing examiner. Mr. Cruz has asked this court to review the agency's denial of benefits.

## II.

As Justice Musmanno explained for the court in *Pittsburgh Pipe & Coupling Co. v. Unemployment Comp. Bd. of Review,* 401 Pa. 501, 165 A.2d 374, 377–78 (1960),

> [t]he Unemployment Compensation Law is remedial humanitarian legislation of vast import. Its benefits sections must be liberally and broadly construed. It is primarily intended for the benefit of unemployed workers.

> \* \* \* \* \* \*

> The Act has wiped out the acute and almost unbearable hardships which heretofore accompanied unanticipated loss of employment. The employee does not need to fear now that suddenly, because he has been "laid off", the bread will be taken off his table and his wife and children will be bereft of adequate heat, light, raiment and perhaps even a roof over their heads.

> \* \* \* \* \* \*

> Of course, the Act is not intended to require payment to the shirker, the slothful or the indolent, but if the claimant is obviously in good faith in his expressed desire to work, but no matter how earnestly he reaches, his arms are not long enough to take and hold on to the job, he is in the "necessitous" state spelled out in the Act.

(Citations and internal quotation marks omitted).

 The purpose of the District's unemployment compensation statute is to protect employees against economic dependency caused by temporary unemployment and to reduce the need for other welfare programs. *Jones v. District of Columbia Unemployment Compensation Bd.,* 395 A.2d 392, 395 (1978); *Von Stauffenberg v. District of Columbia Unemployment Compensation Bd.,* 148 U.S.App.D.C. 104, 107, 459 F.2d 1128,

1131 (1972). Underlying this purpose is the idea that employers ought to compensate their employees who become unemployed through no fault of their own. *Von Stauffenberg, supra,* 148 U.S.App.D.C. at 107, 459 F.2d at 1131. Conversely, benefits ought not be conferred on employees whose unemployment is of their own making. *Gomillion v. District of Columbia Dep't of Employment Servs.,* 447 A.2d 449, 453 (D.C.1982) (Ferren, J., concurring) (citing legislative history of D.C.Code § 46–310(a) (1980), now codified at § 46–111(a) (1990)); *Jones, supra,* 395 A.2d at 395. We have stated in the context of an employee's discharge for misconduct that

> [i]n order to disqualify a claimant from benefits, it is not sufficient that the discharge appear reasonable in reference to the business interest of the employer. Rather, the question whether the employee committed misconduct must be resolved with reference to the statutory purpose, which is to protect employees against economic dependency caused by temporary unemployment.

*Butler v. District of Columbia Dep't of Employment Servs.,* 598 A.2d 733, 735 (D.C. 1991) (citing *Williams v. District of Columbia Unemployment Compensation Bd.,* 383 A.2d 345, 349 (D.C.1978)); *see also Jones, supra,* at 395; *Hickenbottom v. District of Columbia Unemployment Compensation Bd.,* 273 A.2d 475, 478 (D.C.1971). Although misconduct is not an issue in the present case, the remedial goals of the legislation apply equally in "voluntary quit" cases such as this. *See Wright v. District of Columbia Dep't of Employment Servs.,* 560 A.2d 509, 511–512 (D.C.1989).

 "[A]ny individual who left his most recent work voluntarily without good cause connected with the work, as determined under duly prescribed regulations, shall not be eligible for benefits...." D.C.Code § 46–111(a) (1990); *see also* 7 DCMR § 311.1 (1986). A voluntary resignation does not automatically disqualify an employee from receiving unemployment compensation; indeed, he continues to be eligible for benefits if his departure was for good cause connected with the work. Leaving is presumed to be involuntary unless the claimant admits (or the

employer establishes) that it was voluntary. 7 DCMR § 311.3 (1986). The test of voluntariness is whether it appears from all of the circumstances that an employee's departure was "voluntary in fact, within the ordinary meaning of the word 'voluntary.'" 7 DCMR § 311.2. We have held that an employee's resignation is "voluntary" if it was based on his own volition, and not compelled by the employer. *See, e.g., Lyons v. District of Columbia Dep't of Employment Servs.,* 551 A.2d 1345, 1346 (D.C.1988) (citing *Giesler v. District of Columbia Dep't of Employment Servs.,* 471 A.2d 246, 246–47 (D.C.1983)).

■■■ If a claimant's departure was voluntary, he is ineligible for benefits unless he can demonstrate "good cause connected with the work" for leaving. 7 DCMR § 311.4 (1986). The determination of "good cause connected with the work" is factual in nature, and turns on what "a reasonable and prudent person in the labor market" would do under similar circumstances.[2] *Kramer v. District of Columbia Dep't of Employment Servs.,* 447 A.2d 28, 30 (D.C.1982); *see also* 7 DCMR § 311.5 (1986).

### III.

■■■ Our review of the agency's findings is limited. Under the District's Administrative Procedure Act, we inquire

(1) whether the agency has made a finding of fact on each material contested issue of fact; (2) whether substantial evidence of record supports each finding; and (3) whether conclusions legally sufficient to support the decision flow rationally from the findings.

*Glenbrook Road Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 605 A.2d 22, 31 (D.C.1992) (citation omitted); *Washington Post Co. v. District of Columbia Unemployment Compensation Bd.,* 379 A.2d 694, 696 (D.C.1977); *see* D.C.Code § 1–1509(e) (1987). In the present case, the record supports the hearing examiner's determination, sustained by DOES, that Mr. Cruz' resignation from UPO was voluntary. Both Mr. Cruz and the employer's representative[3] testified that Mr. Cruz left UPO to accept what he expected to be a more lucrative position with the LFTA. *See Gomillion, supra,* 447 A.2d at 450–51 (holding that the resignation of a concrete finisher who quit his job to take a similar position at a higher wage was "voluntary" within the meaning of the Act). The hearing examiner's Findings of Fact and Conclusions of Law reflect this testimony. Although Mr. Cruz denied at the hearing that his resignation was voluntary, he indicated on his application for benefits that he "Left Voluntarily," and provided no additional explanation. *Cf. Bowen v. District of Columbia Dep't of Employment Servs.,* 486 A.2d 694, 697 (D.C. 1985). Accordingly, we conclude that the finding that "claimant left his most recent work of his own volition" and "was not forced, coerced, or encouraged by the employer to quit [his] job" was supported by substantial evidence in the record as a whole.

■■■ The remaining question is whether Mr. Cruz had "good cause connected with the work" for tendering his resignation. Applicable DOES regulations provide numerous examples of what . does[4] and does

---

2. As to whether "good cause connected with the work" requires "fault" on the part of the employer, *see Gomillion, supra,* 447 A.2d at 453 (Ferren, J., concurring); *cf. Gopstein v. District of Columbia Dep't of Employment Servs.,* 479 A.2d 1278, 1281 (D.C.1984). Courts in other jurisdictions are divided. *Compare Ames v. Employment Appeal Bd.,* 439 N.W.2d 669, 674 (Iowa 1989) *with Kessler v. Industrial Comm'n,* 27 Wis.2d 398, 134 N.W.2d 412, 414 (1965).

3. UPO's witness testified that "I'm looking at his resignation termination form ... effective August 9, 1991, resigning because I received a better job offer."

4. Reasons considered good cause connected with the work for voluntary leaving include, but are not limited to, the following:
 (a) Racial discrimination or harassment;
 (b) Sexual discrimination or harassment;
 (c) Failure to provide remuneration for employee services;
 (d) Working in unsafe locations or under unsafe conditions;
 (e) Illness or disability caused or aggravated by the work; Provided, that the claimant has previously supplied the employer with a medical statement; and
 (f) Transportation problems arising from the relocation of the employer, a change in the primary work site, or transfer of the employee to a different work site; Provided, that ade-

not[5] constitute "good cause connected with the work." None of these examples fits the present case with any precision. The record reveals that Mr. Cruz identified two potential "good causes" for his voluntary departure from UPO. First, he alleged that UPO was in a financial crisis, that employees had been furloughed, that he believed that his position was at risk, and, implicitly, that he would soon be out of work if he did not secure another job. Second, he alleged that he encountered "a lot of resistance to me carrying out my job" from the support staff of his superiors, and that this resistance made it "very uncomfortable" for him to stay on the job.

"All facts used as the basis of a decision shall be clearly identified in the record." 7 DCMR § 307.2 (1986). "The findings of fact shall consist of a concise statement of conclusions upon each contested issue of fact." 7 DCMR § 308.3; *see Selk v. District of Columbia Dep't of Employment Servs.*, 497 A.2d 1056, 1059 (D.C.1985). The hearing examiner, however, did not address in her findings the allegation by Mr. Cruz that UPO was suffering financial difficulties which necessitated furloughs and threatened his job, nor did she deal with the alleged "resistance" which Mr. Cruz claimed to have encountered from the Executive Director's support staff. On the contrary, the decision was based solely on the fact that Mr. Cruz quit his job to accept another offer.

 If Mr. Cruz had left UPO only because he had accepted a better offer, recovery would be foreclosed under our decision in *Gomillion.* In that case, a concrete finisher resigned from his job, intending to take a similar position with another company at a higher wage. *Gomillion, supra,* 447 A.2d at 450. When he reported for work at the new company, however, he found that the job which he had been promised was not available. *Id.* The agency held that Gomillion had failed to show "good cause connected with the work," *id.* at 451, and this court affirmed.[6]

 This case is unlike *Gomillion,* however, in that Mr. Cruz alleged that he voluntarily left UPO, at least in part, because UPO's financial instability seriously threatened his job security, and because other employees on the staff of his boss had made it difficult for him to stay on. These reasons merit scrutiny under the "reasonable and prudent person" test articulated in *Kramer, supra,* 447 A.2d at 30. Moreover, the sufficiency of a claimant's asserted justifications must be considered in light of the remedial purposes of the statute.

The hearing examiner made no findings regarding the conditions at UPO which, according to Mr. Cruz, led him to seek employment elsewhere. Indeed, she made no attempt at the hearing to elicit facts relevant to the complainant's allegations as to the situation existing at UPO. We do not know if the employer was, in fact, in financial peril, or if Mr. Cruz reasonably believed that it was. No inquiry was made as to the nature and extent of the alleged furloughs. We likewise have no specific information, or findings, regarding the pressures which allegedly made it difficult for Mr. Cruz to stay on.

We do not suggest that an employee's concerns about possible discharge on account of his employer's actual or perceived financial

---

quate, economical, and reasonably distanced transportation facilities are not available.
7 DCMR § 311.7 (1986).

**5.** The following shall not constitute good cause connected with the work for voluntary leaving:
 (a) Refusal to obey reasonable employer rules;
 (b) Minor reduction in wages;
 (c) Transfer from one type of work to another which is reasonable and necessary;
 (d) Marriage or divorce resulting in a change of residence;
 (e) General dissatisfaction with work;
 (f) Resignation in order to attend school or training; and

(g) Personal or domestic responsibilities.
7 DCMR § 311.6 (1986).

**6.** *But see Dank v. Ross,* 81 A.D.2d 717, 437 N.Y.S.2d 730, 731 (1981), in which the court reversed the disqualification of a claimant by the Unemployment Insurance Appeal Board because "[t]he undisputed facts here plainly establish that claimant left his employment due to a firm offer of employment and, therefore, he had good cause for leaving his employment, despite the fact that a salary was not fixed".

straits,[7] or the employee's own difficulties with fellow-employees,[8] would necessarily constitute "good cause connected with the work" within the meaning of the statute. "In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous or compelling circumstances." *See* 81 C.J.S. *Social Security* § 226, at 450 (1977 & Supp. 1993), and authorities there cited. This may not be an easy standard for Mr. Cruz to meet.

Nevertheless, given the points raised by Mr. Cruz, we cannot say that the hearing examiner made a finding on each relevant issue of fact, or that the agency's decision was based on substantial evidence in the record as a whole. *Cf. Selk, supra,* 497 A.2d at 1059. Having alleged financial crises and employee furloughs, as well as activities, on the part of aides to his boss, which made it difficult for him to stay on board, Mr. Cruz satisfied the threshold requirement that he articulate material issues of fact.[9] He was therefore entitled to have these issues adequately explored and then resolved by reasonably specific findings. This did not occur. Accordingly, we reverse the agency's decision and remand the case to DOES for further proceedings consistent with this opinion.

*So ordered.*[10]

---

7. *See generally* Annotation, *Eligibility for Unemployment Compensation of Employee Who Left Employment Based on Belief that Involuntary Discharge was Imminent,* 79 A.L.R.4th 529 (1990).

8. *See generally,* Annotation, *Harassment or Other Mistreatment by Co–Worker as "Good Cause" Justifying Abandonment of Employment,* 40 A.L.R.4th 304 (1985). "[F]ailure to get along with one's boss does not constitute good cause for leaving one's employment...." *In re Claim of Wolfbiss,* 173 A.D.2d 1047, 570 N.Y.S.2d 382, 383 (1991) (per curiam).

9. Claimants commonly represent themselves in unemployment compensation proceedings, and it would be unreasonable, under such a statutory scheme, to set too high a threshold. *Cf. Goodman v. District of Columbia Rental Hous. Comm'n,* 573 A.2d 1293, 1299 (D.C.1990).

10. Given the hearing examiner's apparent perception that any issues relating to conditions at UPO were not material, it may be appropriate on remand, upon the request of either party, to reopen the record.