**Rhashida BEYNUM, Petitioner,**

v.

**ARCH TRAINING CENTER, Respondent.**

**No. 09–AA–83.**

District of Columbia Court of Appeals.

Submitted May 12, 2010.

Decided June 24, 2010.

Rhashida Beynum, pro se.

Respondent Arch Training Center did not file a brief.

Before RUIZ and OBERLY, Associate Judges, and FARRELL, Senior Judge.

RUIZ, Associate Judge:

Petitioner, Rhashida Beynum, challenges the Office of Administrative Hearings's determination that she is not eligible to receive unemployment compensation benefits because she voluntarily quit her employment at Arch Training Center without "good cause connected with the work." Because the Administrative Law Judge did

not address all of the relevant portions of petitioner's testimony in her "good cause" analysis, we reverse and remand for further proceedings consistent with this opinion.

**I.**

Arch Training Center ("Arch") is a vocational training facility for at-risk youth, persons in the Temporary Assistance to Needy Families program, and ex-offenders. In February 2008, petitioner signed a contract with Arch to teach courses on customer service and hospitality, and she eventually taught two ten-week sessions of classes. The first session of classes had between eleven and thirteen students; however the second session initially had only five participants, and approximately halfway through the session there was only one participant left. Sometime during the second session of classes, Arch's executive director had a discussion with petitioner in which the director indicated that the course "just didn't really work with one person."

Petitioner later met with the executive director and stated that she would be leaving Arch to pursue another employment opportunity. Petitioner's last day of work was in July 2008. She was subsequently self-employed and then requested unemployment compensation benefits in October 2008.

A Department of Employment Services Claims Examiner initially determined that petitioner was eligible for benefits because she had been laid off for lack of work. Arch appealed to the Office of Administrative Hearings ("OAH"), asserting that petitioner was not eligible to receive unemployment benefits because she was an independent contractor and because she had voluntarily left her job. After a hearing, an OAH Administrative Law

Judge ("ALJ") reversed the Claims Examiner's determination, finding that petitioner was an employee of Arch—not an independent contractor—but that she had voluntarily left her employment with Arch without "good cause connected with the work." The ALJ concluded that petitioner was barred from receiving unemployment benefits under D.C.Code § 51–110(a) (2001).[1]

## II.

■ Before this court, petitioner challenges the ALJ's finding that she voluntarily quit her job without good cause. We have not received a response from Arch.

■ We review the ALJ's decision to confirm that "(1) the [ALJ] made findings of fact on each contested material factual issue, (2) substantial evidence supports each finding, and (3) the [ALJ's] conclusions of law flow rationally from its findings of fact." *Georgetown Univ. v. District of Columbia Dep't of Employment Servs.*, 971 A.2d 909, 915 (D.C.2009); *see also* D.C.Code § 2–510(a)(3)(A) (2001). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Washington Post Co. v. District of Columbia Unemployment Comp. Bd.*, 377 A.2d 436, 439 (D.C.1977) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

Pursuant to the District's unemployment compensation statute, an employee is disqualified from receiving unemployment compensation benefits if she "left [her] most recent work voluntarily without good cause connected with the work." D.C.Code § 51–110(a). There is a presumption that an employee left her job involuntarily "unless the [employee] acknowledges that the leaving was voluntary or the employer presents evidence sufficient to support a finding by the Director that the leaving was voluntary." 7 DCMR § 311.3 (2010); *see also Green v. District of Columbia Dep't of Employment Servs.*, 499 A.2d 870, 873 (D.C.1985). An employee can be said to have left voluntarily if "the leaving was voluntary in fact, within the ordinary meaning of the word 'voluntary.'" 7 DCMR § 311.2 (2010). Once it has been established that the employee's departure was voluntary, the burden shifts to the employee to "present[ ] evidence sufficient to support a finding ... of good cause connected with the work for the voluntary leaving." 7 DCMR § 311.4 (2010). The "test" for determining whether an employee had "good cause" to leave her employment is "what would a reasonable and prudent person in the labor market do in the same circumstances." 7 DCMR § 311.5 (2010).

In the proceedings before the ALJ, Arch's representative, LaDonna Etheridge, testified that petitioner "voluntarily quit the contract before ... it ended. She had let her ... immediate supervisor and the executive director know that she would be taking another position ... doing something with senior citizens." The ALJ later requested additional information from Etheridge regarding petitioner's departure, asking, "Now you said Mrs. Beynum informed someone that she was going to

---

1. D.C.Code § 51–110(a) states: "For weeks commencing after March 15, 1983, any individual who left his most recent work voluntarily without good cause connected with the work, as determined under duly prescribed regulations, shall not be eligible for benefits until he has been employed in each of 10 subsequent weeks (whether or not consecutive) and, notwithstanding § 51–101, has earned wages from employment as defined by this subchapter equal to not less than 10 times the weekly benefit amount to which he would be entitled pursuant to § 51–107(b)."

take another position?" Etheridge responded that petitioner had "informed [her supervisor] and she also informed the executive director and we spoke briefly about it on her last day." Etheridge testified that she did not "know the exact wording" that petitioner used in these discussions and that she could "only speak of what me and [petitioner] discussed." Etheridge concluded, "Just basically she told me that she was accepting another position with, I don't want to say, I guess working with senior citizens doing something that she likes to do."

Petitioner testified that, after the number of students in her second session of classes decreased, Arch's executive director "[a]sked for a meeting and ... indicated that the ... customer service hospitality course that I was training really didn't work with just one student." Petitioner stated that the executive director told her that "in between sessions there was some lag time because they didn't have enough participants to start up a new session, so the second session that [petitioner] did teach was delayed longer than expected ... [S]he said that ... [the classes] just really don't work with one ... student, and they weren't sure what was going to happen after [the second] session." Petitioner explained, "So based on that, and we had some other dialogue in there, based on that I did have a conversation with [my supervisor] and I did have a conversation later with [the executive director] and did tell them that I would be taking another, or leaving, that's what I told them, I shared later that I would be taking another position."

The ALJ's order states that petitioner "provided credible testimony that she resigned" and concluded, on the basis of this testimony, that petitioner voluntarily quit her position with Arch. We agree with the ALJ's determination of this issue. Furthermore, we note that the ALJ's decision is supported by Etheridge's testimony as well as Arch's letter of appeal to the OAH, which states that it was management's "intention[ ] to have Ms. Beynum stay on as our instructor; however, prior to the end of the second session Ms. Beynum informed our Director of Education and Training that she would not be returning because she was going to pursue other interests."

With respect to the ALJ's determination that petitioner did not "provide[ ] sufficient evidence that she had good cause connected with the work for resigning," however, we conclude that the ALJ erred by failing to consider petitioner's testimony that she told Arch that she was going to take another job "based on" the executive director's assertion that "[the classes] just really don't work with one ... student, and they weren't sure what was going to happen after [the second] session." As we understand this testimony, and as petitioner argues, her decision to "tak[e] another position" was motivated by her perception of uncertainty regarding her future at Arch. This is a legally significant fact because it is possible that petitioner's actions, taking into account all the relevant circumstances, would have satisfied the "reasonable person" test for "good cause" that is set forth in the District's unemployment compensation regulations. *See* 7 DCMR § 311.5.[2]

**2.** Petitioner's case differs from one where the employee's only stated reason for taking a different job relates to the new employer's promise of increased pay. *See Gomillion v. District of Columbia Dep't of Employment Servs.,* 447 A.2d 449, 451 (D.C.1982) (holding that an employee's "expectation of earning higher wages" does not constitute "good cause connected with the work"). *See also* Annotation, *Unemployment Compensation: Leaving Employment to Become Self-Employed or To Go Into Business for Oneself as*

In *Cruz v. District of Columbia Dep't of Employment Servs.*, 633 A.2d 66 (D.C. 1993), we reversed and remanded in similar circumstances. There, the employee "alleged that [his employer] was in a financial crisis, that employees had been furloughed, [and] that he believed that his position was at risk." *Cruz*, 633 A.2d at 71. The hearing officer did not address this allegation in her findings, and in reversing the agency's order we explained that "[t]hese reasons merit scrutiny under the 'reasonable and prudent person' test." *Id.* We declined to hold that "an employee's concerns about possible discharge on account of his employer's actual or perceived financial straits ... would necessarily constitute 'good cause connected with the work.'" *Id.* at 71–72. However, the employee had satisfied the. "threshold requirement that he articulate material issues of fact" and was "therefore entitled to have these issues adequately explored and then resolved by reasonably specific findings." *Id.* at 72.

■ In this case, the Claims Examiner's determination that petitioner had been laid off "for lack of work" should have alerted the ALJ to the possibility that petitioner's decision to leave Arch was motivated by the uncertain future of her position with Arch and her desire to seek improved job security in the marketplace. While we recognize that petitioner's testimony lacked specificity, she did say that her decision to leave her employ was linked to her supervisor's expressed uncertainty that the employer "[wasn't] sure what was going to happen after this session." As is the case with many claimants for unemployment compensation, petitioner was proceeding *pro se* before the ALJ "and it would be unreasonable, under [the District's unemployment compensation] scheme, to set too high a threshold" for the articulation of material facts. *Cruz,*

633 A.2d at 72 n. 9. "[T]he sufficiency of a claimant's asserted justifications must be considered in light of the remedial purposes of the statute." *Id.* at 71; *see also Berkley v. D.C. Transit, Inc.*, 950 A.2d 749, 763 (D.C.2008) (reversing and remanding in part because "the ALJ may have overlooked the remedial and humanitarian purposes of the Unemployment Compensation Act, as well as the fact that the Act 'relies largely on lay persons, operating without legal assistance, to initiate and litigate ... proceedings'") (quoting *Cruz*, 633 A.2d at 69). If necessary, the ALJ should probe the witnesses for further clarification of material facts, as the ALJ did with respect to whether petitioner was an employee or independent contractor. Here, there was enough presented on the record such that the ALJ's failure to flesh out and address all of petitioner's relevant testimony in her order warrants reversal and a remand for further proceedings. *See* D.C.Code § 17–306 (2001).

The decision of the District of Columbia Office of Administrative Hearings is hereby

*Reversed.*