Folasade A. PYNE, Petitioner,

v.

MB STAFFING SERVICES,
LLC, Respondent.

No. 10–AA–1501.

District of Columbia Court of Appeals.

Submitted Jan. 18, 2012.

Decided March 22, 2012.

Folasade A. Pyne, pro se.

Thomas B. Martin, Washington, DC, for respondent.

Before GLICKMAN and THOMPSON, Associate Judges, and BELSON, Senior Judge.

GLICKMAN, Associate Judge:

Petitioner, Folasade A. Pyne, asks this court to review an order of the Office of Administrative Hearings ("OAH") declaring her disqualified from receiving unemployment benefits because she voluntarily left her employment with respondent, Mb Staffing Services ("Mb"), without "good cause connected with the work." Petitioner contends the administrative law judge erred in finding that (1) she resigned her employment with Mb by accepting a work assignment through another temporary staffing firm, and (2) she lacked the requisite good cause to do so. For the reasons that follow, we affirm the decision of the OAH.

I.

Petitioner worked for Mb, a staffing service that provides business and government clients with temporary clerical work-ers, at a number of different client assignments from September 17, 2009, to June 1, 2010. On April 20, 2010, she was assigned to work in an office of the District of Columbia Department of the Environment ("DDOE"). At the end of May, petitioner's supervisor at DDOE informed her that DDOE would be switching from Mb to another temporary staffing agency, Ross Professional ("Ross"), and that if petitioner wanted to remain in her assignment at DDOE, she would have to register with Ross and work through them. This would mean she would be paid by Ross instead of by Mb.

Petitioner passed this information on to her manager at Mb, Jeffrey Hebert. He told her that the decision whether to switch to Ross or stay with Mb and be reassigned was up to her. Petitioner chose to sign on with Ross in order to continue in her assignment at DDOE. She confirmed this in a May 28 email to Hebert, in which she added that "[i]f there is any possibility of being reassigned to another department within DDOE, one with a larger budget, I would definitely be interested. I enjoy working with there [sic], it's just the pay that is not working." Hebert interpreted this to mean that while petitioner was leaving Mb's workforce, she wanted Mb to keep her in mind and let her know if a better paying opportunity became available.

Petitioner worked at DDOE on assignment from Ross from June 2 to June 23, 2010. During this period, her wages were paid by Ross and she did not seek any assignments from Mb. According to Hebert, other placements would have been available to her through Mb had she not been on assignment with Ross.

Shortly after June 23, while petitioner was out on vacation, Ross informed her that her DDOE supervisor had asked that she not return to work. Unable to secure another work assignment from either Ross

or Mb, petitioner filed for unemployment compensation, identifying Mb as the employer for whom she last had performed thirty days' work.[1] A claims examiner determined that petitioner was eligible for benefits. Mb appealed that ruling to the OAH.

After a hearing at which both petitioner and Hebert testified, the administrative law judge found that petitioner's voluntary decision to sign on with Ross was the "functional equivalent" of quitting her job with Mb even though she never submitted a formal resignation to Mb and she told Hebert that she would be interested in considering suitable offers of assignment from Mb in the future. "While it is true that Claimant thought that she was preserving her employment," the judge stated, "she was not preserving her employment *with Employer* [i.e., Mb]." Moreover, the judge found, there was no evidence that other work assignments would have been unavailable to petitioner had she remained with Mb.[2] The judge concluded that petitioner did not demonstrate that her decision to leave Mb was for good cause connected with the work. Consequently, the judge ruled, petitioner was disqualified from receiving unemployment benefits.

## II.

■ We must affirm an OAH decision when (1) the administrative law judge

made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) the conclusions flow rationally from the findings of fact.[3] The judge's conclusions must be sustained unless they are "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[4] Applying these standards of review, we find no reason to overturn the OAH decision in this case.

Under D.C.Code § 51–110(a) (2009 Repl.), a claimant is disqualified from receiving unemployment benefits if she "left [her] most recent work voluntarily [and] without good cause connected with the work." The term "most recent work" in this provision is statutorily defined to "mean the employer for whom the individual last performed 30 work days" of services.[5] Hence, for purposes of determining her entitlement to benefits, petitioner's "most recent work" was with Mb (not Ross, where her employment lasted fewer than 30 work days); and the question turns on whether petitioner left Mb voluntarily and without good cause connected with the work.[6]

■ The administrative law judge's determination that petitioner left Mb voluntarily is supported by substantial evidence.[7] "[A]n employee's resignation is

---

1. Petitioner was able to resume working for Mb on August 12, 2010.

2. Nor was there evidence that petitioner's employment relationship with Mb was unsatisfactory or that she had any reason to leave Mb other than to remain in her placement at DDOE.

3. *Rodriguez v. Filene's Basement, Inc.*, 905 A.2d 177, 180 (D.C.2006).

4. *Id.* at 181 (internal quotation marks omitted); D.C.Code § 2–510(a)(3)(A) (2001).

5. D.C.Code § 51–101(26) (2011 Supp.).

6. Thus, it is immaterial that petitioner may not have left her job with Ross voluntarily, or that if she did, she may have had the requisite justification for doing so.

7. As the judge recognized, an employee's departure from work is "presumed to be involuntary unless the [employee] acknowledges that the leaving was voluntary or the employer presents evidence sufficient to support a finding ... that the leaving was voluntary." 7 DCMR § 311.3. Thus, the employer typical-

voluntary if it was based on [her] own volition, and not compelled by the employer." [8] Hebert testified, and petitioner did not dispute, that it was entirely her decision whether to continue at the DDOE under the employ of Ross or seek another assignment through Mb (which would have been available to her). Furthermore, both petitioner and Hebert testified that during the time petitioner worked for Ross, she did not seek or receive additional assignments from Mb. Even so, petitioner maintains that she cannot be found to have left Mb voluntarily, because she did not leave at all: She never formally resigned from the firm; instead, she simply registered with, and took a work assignment from, a second temp agency. Hebert agreed that it is not unusual for someone to be registered with more than one temporary staffing agency at a time.

Despite petitioner's contentions, the administrative law judge was entitled to find that, of her own volition, petitioner was not employed by Mb while she was working at the DDOE under Ross's auspices. The judge's finding is supported by the undisputed facts that, during the time petitioner was assigned to the DDOE by Ross, she performed no services for Mb and neither earned nor received compensation from Mb. Indeed, under the statutory framework, as the judge noted, "[a]n individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no earnings are payable to him." [9] Therefore, while petitioner may have anticipated the possibility of being offered and accepting a hypothetical assignment from Mb some time in the future, the judge properly could find that she voluntarily left Mb's employ when she ceased working for it to take an actual assignment in the meantime with its competitor.[10]

■■■ Once it has been established that the claimant left her job voluntarily, she bears the burden of proving that she did so for "good cause connected with the work." [11] "The determination of 'good cause connected with the work' is factual in nature," and the adequacy of a work-connected cause "turns on what 'a reasonable and prudent person in the labor market' would do under similar circumstances." [12] Here the relevant facts are not in dispute: Petitioner did not leave Mb because the conditions there were intolerable,[13] nor because she expected to be without work had she stayed.[14] She left

---

ly bears the burdens of production and persuasion on the issue of voluntariness.

**8.** *Cruz v. District of Columbia Dep't of Emp't Servs.*, 633 A.2d 66, 70 (D.C.1993).

**9.** D.C.Code § 51–101(5) (2009 Repl.)

**10.** *Cf. Freeman v. District of Columbia Dep't of Emp't Servs.*, 568 A.2d 1091, 1093 (D.C.1990) (upholding determination that an employee who changed her status from full-time banquet server for a hotel to on-call server, and who then filed for benefits during a three-week period in which the hotel had no work to offer her, had voluntarily quit within the meaning of the unemployment compensation statute because her voluntary change in status had the "effect of maximizing the possibility that the employee [would] not be employed").

**11.** 7 DCMR § 311.4.

**12.** *Cruz*, 633 A.2d at 70 (footnote omitted; quoting *Kramer v. District of Columbia Dep't of Emp't Servs.*, 447 A.2d 28, 30 (D.C.1982)); *see also* 7 DCMR § 311.5.

**13.** *See* 7 DCMR § 311.7 (listing examples of good cause connected with the work, including unlawful discrimination or harassment, unsafe or unhealthy conditions, and comparably serious reasons).

**14.** *Cf. Cruz*, 633 A.2d at 71–72 (remand for determination of whether employee showed good cause connected with the work, where the employee claimed that he left because his employer's financial difficulties threatened his job security and other employees had inter-

because she preferred to remain in her assignment at DDOE rather than be transferred by Mb to another assignment. As a general rule, an employee's decision to leave one employer in favor of a better job with another does not constitute good cause connected with the work.[15] That Mb would have given petitioner a different work assignment had she stayed is legally insufficient justification for her departure; the interpretive regulations specifically state that an employee's "[t]ransfer from one type of work to another which is reasonable and necessary" does not constitute good cause connected with the work.[16] In *Cruz* we declared that to establish the requisite good cause, "there must be some compulsion produced by extraneous and necessitous or compelling circumstances."[17] No such compulsion was shown to have motivated petitioner to leave Mb. We conclude that the administrative law judge did not err in concluding that petitioner failed to show good cause in connection with her work for leaving Mb.

The decision of the OAH in this case declaring petitioner disqualified from receiving unemployment benefits is *affirmed.*

fered with his ability to perform his job); *accord Beynum v. Arch Training Ctr.*, 998 A.2d 316, 320 (D.C.2010); *see also Berkley v. D.C. Transit, Inc.*, 950 A.2d 749, 762–63 (D.C. 2008) (substantial reduction in employee's hours and employer's failure to pay wages constitute good cause to leave work).

15. *See Gomillion v. District of Columbia Dep't of Emp't Servs.*, 447 A.2d 449, 451 (D.C.1982) (holding that a concrete finisher who left his position at one company to take a higher paying position at another had not satisfied the good cause test); *see also Cruz*, 633 A.2d

at 71 ("If Mr. Cruz had left UPO only because he had accepted a better offer, recovery would be foreclosed under our decision in *Gomillion.*").

16. 7 DCMR § 311.6(c). Other insufficient reasons for voluntarily leaving work include a "[m]inor reduction in wages" and "[g]eneral dissatisfaction" with the job. *Id.* § 311.6(b), (e).

17. 633 A.2d at 72 (quoting 81 C.J.S. Social Security § 226, at 450 (1977 & Supp.1993)).