## GEORGE WASHINGTON UNIVERSITY MEDICAL CENTER, Petitioner,

v.

## DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SER-VICES, Respondent.

### Catherine Coates, Intervenor.

### No. 96–AA–1157.

District of Columbia Court of Appeals.

Argued Oct. 14, 1997.

Decided Nov. 6, 1997.

Jeffrey P. Russell, Silver Spring, MD, for petitioner.

Charles Krikawa, College Park, MD, for intervenor.

Jo Anne Robinson, Interim Corporation Counsel at the time, and Charles L. Reischel, Deputy Corporation Counsel, filed a state-ment in lieu of brief for respondent.

Before FARRELL and REID, Associate Judges, and GALLAGHER, Senior Judge.

FARRELL, Associate Judge:

Petitioner, George Washington University Medical Center (GWMC), seeks review of a decision of the District of Columbia Depart-ment of Employment Services (DOES) which awarded intervenor Catherine Coates tempo-rary total disability benefits from February 16, 1993, through April 25, 1993, and from May 5, 1993, to the present and continuing. A DOES hearing examiner concluded that Ms. Coates resigned from her employment with GWMC in February 1993 because, as a result of a 1989 work-related injury, she was no longer able "to perform the modified duties of a clinical nurse IV" with GWMC. Petitioner contends that the hearing examin-er's findings which led to the conclusion of temporary total disability are not supported by substantial evidence in the record.

We conclude that the case must be re-manded for further consideration, because the hearing examiner's findings contain an apparent internal contradiction that renders us unable to perform our review for "sub-stantial evidence," specifically, to determine whether the conclusion of disability "follow[s] rationally from [the examiner's] findings." *Perkins v. District of Columbia Dep't of Em-ployment Servs.,* 482 A.2d 401, 402 (D.C. 1984).[1]

Ms. Coates was employed as a nurse by GWMC from 1956 through September 1973

1. The Director of DOES issued no opinion and did not act on petitioner's administrative appeal

and from June 1980 through February 1993, when she resigned. The examiner found, and it is not disputed, that Ms. Coates suffered a work-related injury to her back in December, 1989. Over the next three years, Ms. Coates was treated by two physicians whom she consulted, Dr. Kobrine and—much more frequently—Dr. Graeter. From the beginning, these physicians allowed her to return to nursing duty with GWMC subject to restrictions against bending, stooping, lifting and performance of coronary pulmonary resuscitation (CPR). The hearing examiner "placed significant weight and wholly relied upon the medical opinions of ... Dr. Graeter and Dr. Kobrine." Specifically, the examiner found that "[t]he treatment regimens of both doctors," including the "specified [work] restrictions," were "reasonably calculated to restore claimant's health and well-being." The examiner expressly found that, despite "infrequent" absences that Ms. Coates had had (and presumably would continue to have) as a result of pain stemming from the 1989 injury, she "may return to work under the same restrictions imposed by Dr. Graeter."

The apparent self-contradiction in the examiner's findings, however, arises from the examiner's subsequent finding that GWMC had modified Ms. Coates' nurse IV position in accordance with the restrictions imposed by her physicians. The examiner cited Ms. Coates' own "testi[mony] that her position was modified in compliance with the restrictions: she did not have to bend, stoop, lift or perform CPR." The problem, according to the examiner, was that Ms. Coates "was unable to cope with the *modified* work of a clinical nurse because she continued to undergo back and left leg pain" (emphasis added). The examiner thus concluded that "the modified clinical nurse IV position was not suitable alternative employment" for Ms. Coates, and it was this "inability to perform the modified duties of a clinical nurse IV,"

combined with GWMC's failure to offer her "a modified position which she was able to perform within her restrictions," that caused Ms. Coates to resign from her employment.

Plainly, if GWMC modified Ms. Coates' position to reflect the restrictions imposed by her doctors, then the conclusion of continuing (temporary) total disability cannot be reconciled with the examiner's other finding that Ms. Coates is able "to return to work with the specified restrictions." Ms. Coates' counsel argues that the record fairly supports a finding that her "back injury was preventing her from even performing in a modified capacity." He points to the fact, for example, that in the three weeks before her resignation she was repeatedly seen by Dr. Graeter and reported "[s]evere pain in her back radiating down her left leg, with numbness in her left foot." This and other evidence in the record might well support a finding that Ms. Coates could not work even under the restrictions imposed by her doctors and adopted by GWMC (an issue we do not decide), but that is a finding which the hearing examiner did not make and *could* not make while simultaneously finding that "she may return to work under the same restrictions imposed by Dr. Graeter." [2]

Until the examiner resolves this conflict in her own findings, we cannot know whether the conclusion of disability flows rationally from the findings of fact. *Perkins, supra.* In particular, we cannot know what meaning to attach to the examiner's ultimate finding that Ms. Coates "was not supplied with a modified position which she was able to perform within her restrictions." If this means that GWMC was obliged to modify the position beyond the restrictions ordered by Ms. Coates' physicians, it must be squared with the examiner's contrary finding that the modifications already made were sufficient. If it means that GWMC at some point removed the restrictions and required Ms. Coates to resume her original duties,[3] then it

within forty-five days, whereupon the examiner's compensation order became final for purposes of this appeal. D.C.Code § 36–322(b)(2) (1997).

**2.** GWMC argues that *that* finding, besides reflecting the opinions of Drs. Graeter and Kobrine on which the examiner "wholly relied," is supported by the examiner's recognition that Ms. Coates' absences from work as a result of the 1989 accident were "infrequent": between September

1990 and her resignation in February 1993 she was absent due to back pain on, at most, five separate occasions totalling 44 days.

**3.** Ms. Coates testified in fact that on the day before she resigned she was told by a nurse supervisor that henceforth she "had to perform CPR and do all the other duties the other nurses [were] doing," and that otherwise it might be

must be squared with the contrary finding that Ms. Coates was forced to resign because she was unable "to perform the *modified* duties of a clinical nurse IV" (emphasis added). These serious inconsistencies in the examiner's findings must be resolved before further review is possible.

Accordingly, the case is remanded to DOES for further proceedings consistent with this opinion.

*So ordered.*

best for her to seek "medical disability, early retirement, or find[] another position." GWMC's witnesses denied this, and from the conflicting findings which the examiner made it is impossible to know how the examiner resolved this factual conflict.